Petitioner: The PEOPLE of
the State of Colorado,

v.

Respondent: Peter Karl WEINREICH.

No. 04SC436.

Supreme Court of Colorado,
En Banc.

Sept. 12, 2005.

---

John W. Suthers, Attorney General, Cheryl Hone, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Petitioner.

Robert T. Fishman, Denver, for Respondent.

Justice COATS dissents, and Justice KOURLIS and Justice RICE join in the dissent.

HOBBS, Justice.

We granted certiorari in this case to review the court of appeals' decision in *People v. Weinreich*, 98 P.3d 920 (Colo.App.2004).[1]

---

1. We granted certiorari on the following issues:
   1. Whether the three methods of committing child abuse defined in section 18–6–401(1)(a), 6 C.R.S. (2003), overlap sufficiently that a jury instruction may recite a different method than the charging document without impermissibly amending the document under Crim. P. 7(e).
   2. Whether it was plain error, if error at all, to recite a different phrase of the statute defining child abuse, section 18–6–401(1)(a), 6 C.R.S. (2003), in the elemental jury in-

This case involves a traffic accident that occurred when defendant Weinreich was driving with his twin daughters in his lap and attempted to pass a vehicle in front of him. One of the children, Jade, died in the accident; the other, Blake, suffered injuries.

The jury convicted Weinreich of multiple crimes, including reckless child abuse resulting in death under section 18–6–401(1)(a) and (7)(a), C.R.S. (2004). However, the trial court did not deliver to the jury an instruction that conformed to the statute in existence on the day of the accident. Instead, the trial court instructed the jury using an obsolete version of a jury instruction based on statutory language which we expressly disapproved in *People v. Hoehl*, 193 Colo. 557, 560, 568 P.2d 484, 486 (1977). We hold that the trial court committed plain and reversible error by failing to give an instruction that substantially conformed to the existing reckless child abuse resulting in death statute under which the prosecution charged Weinreich.[2]

### I.

Weinreich was driving his Subaru on a two-lane undivided road with his two six-year old twin daughters, Jade and Blake, in his lap unrestrained. An SUV hauling a trailer was driving slowly in front of him. Weinreich attempted to pass the SUV on the left, and at the same time, the SUV attempted to turn left. Weinreich's car made contact with the SUV and then rolled numerous times. Jade was killed; Blake and Weinreich suffered injuries.

A test of Weinreich's blood alcohol level approximately an hour and a half after the accident measured .086. Police found an empty beer can and an empty single-serving vodka bottle in the back seat of the car. Witnesses testified that Weinreich had been drinking earlier in the day.

The prosecution charged Weinreich with reckless child abuse resulting in death,[3] vehicular homicide—alcohol,[4] vehicular homicide—reckless,[5] manslaughter,[6] child abuse resulting in injury,[7] driving under the influence of alcohol,[8] unlawfully overtaking on the left,[9] and driving with excessive blood alcohol content.[10]

The jury found Weinreich guilty of reckless child abuse resulting in death as proscribed by section 18–6–401(1)(a) and (7)(a)(I), C.R.S. (2004). The jury also found him guilty of child abuse resulting in injury and unlawfully overtaking on the left. The jury acquitted Weinreich of the remaining charges, but found him guilty of the lesser-included offenses of careless driving resulting in death,[11] criminally negligent homicide,[12] and driving while ability impaired.[13]

At trial, Weinreich did not dispute that both children were riding unrestrained on his lap when the accident occurred and that he had been drinking that day. His defense was that his level of intoxication did not contribute to the accident and that the driver of the SUV caused the accident by failing to signal the left hand turn. The prosecution put on proof that the SUV's left hand turn signal was operable and visibly flashing be-

struction than in the information, even when that charge and the other charges gave defendant a fair opportunity to prepare his defense and protected him from double jeopardy.

2. The court of appeals based its reversal of Weinreich's child abuse resulting in death conviction principally on grounds of a prejudicial constructive amendment of the information. But it also disapproved of the trial court's use of "an obsolete version of the statute" as an alternate grounds for its judgment. We base our reversal of Weinreich's conviction on both grounds.

3. § 18–6–401(1), (7)(a)(I), C.R.S. (2001). Because the 2004 version of this statute is not materially different from the version in effect at the time of the collision, we cite to the 2004 version.

4. § 18–3–106(1)(b)(I), C.R.S. (2001); § 18–1–105(13), C.R.S. (2001).

5. § 18–3–106(1)(a), C.R.S. (2001).

6. § 18–3–104(1)(a), C.R.S. (2001).

7. § 18–6–401(1), (7)(a)(V), C.R.S. (2001).

8. § 42–4–13–1(1)(a), C.R.S. (2001).

9. § 42–4–1005, C.R.S. (2001).

10. § 42–4–1301(2), C.R.S. (2001).

11. § 42–4–1402(1), (2), C.R.S. (2001).

12. § 18–3–105, C.R.S. (2001).

13. § 42–4–1301(1)(b), C.R.S. (2001).

fore the collision. The parties also disputed the mechanics of the accident, specifically to what extent the impact, the speed of the car, or Weinreich's reactions caused the car to roll.

Another issue at trial was whether Jade's death would have been avoided had she been lawfully restrained in the back seat. Multiple witnesses testified that the back seat was significantly less damaged than the front seat and that a passenger restrained in the back-seat would have been more likely to survive the accident. Weinreich argued that he did not act unreasonably in allowing his children to ride on his lap unrestrained.

The information charged that Weinreich did "cause an injury to the life and health of Jade A. Weinreich ... resulting in the death of Jade A. Weinreich." This is one of the alternative ways of committing child abuse resulting in death, as set forth in section 18–6–401(1)(a) and (7)(a)(I), C.R.S. (2004). However, the trial court instructed the jury that Weinreich could be convicted of the section 18–6–401(1)(a) offense if he had "recklessly permitted a child under the age of sixteen to be unreasonably placed in a situation that *may have endangered* the child's life or health, which resulted in the death of the child." *Weinreich,* 98 P.3d at 922 (emphasis added). The trial court gave this instruction even though we had expressly disapproved of similar language in *Hoehl.* Following *Hoehl,* the General Assembly twice reformulated the offense, resulting in the current statute. *See* 1985 Colo. Sess. Laws, ch. 154, 672. Although a jury instruction conforming to the present statute was readily available at the time of Weinreich's trial, the trial court did not use it. *See* CJI Crim. 22:04 (Pocket Part 1993). Weinreich did not object at trial to the erroneous instruction.

The trial court sentenced Weinreich to twenty-six years in prison for the reckless child abuse resulting in death conviction and imposed concurrent sentences for the other convictions, the longest being three years.

Weinreich appealed his conviction for reckless child abuse resulting in death based on the erroneous instruction. We uphold the judgment of the court of appeals reversing this conviction.

## II.

We hold that the trial court committed plain and reversible error by failing to give an instruction that substantially conformed to the existing reckless child abuse resulting in death statute under which the prosecution charged Weinreich.

### A.

#### Instructional Error

■ A trial court has a duty to instruct the jury correctly on the law applicable to the case. *Jordan v. Bogner,* 844 P.2d 664, 667 (Colo.1993). A jury instruction should substantially track the language of the statute describing the crime; a material deviation from the statute can result in reversible plain error, depending on the facts of the case. *See Auman v. People,* 109 P.3d 647, 661, 663–64, 671 (Colo.2005)(reversing conviction for felony murder on the basis that the instruction given omitted the mens rea element of theft for the felony-murder predicate offense of burglary).

The prosecution charged Weinreich under section 18–6–401(1)(a), C.R.S. (2004), which states that:

A person commits child abuse if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health, or engages in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child.

When death or injury of the child results, section 18–6–401(7)(a)(I) provides that the offense is a class 2 felony.

■ This law sets forth a single offense of child abuse that can be committed in various ways. *See People v. Abiodun,* 111 P.3d 462, 471 (Colo.2005)(finding that section 18–18–405, C.R.S. (2004), dealing with controlled substance possession and distribution, defines a single offense that can be committed in various ways).

The information in this case charged Weinreich with the first statutorily identified way of committing reckless child abuse resulting in death:

> On or about July 29, 2001, [defendant] did unlawfully, feloniously, knowingly, and recklessly *cause an injury to the life and health* of Jade A. Weinreich, a child less than sixteen years of age, *resulting in the death* of Jade A. Weinreich; in violation of 18–6–401(1) and (7)(a)(I).

*Weinreich,* 98 P.3d at 922 (emphasis added.) But, utilizing an obsolete jury instruction, the trial court informed the jury that it could convict Weinreich of reckless child abuse resulting in death if Weinreich had "unreasonably placed [his daughter] in a situation that *may have endangered*" her life or health:

> The elements of the crime of Child Abuse Resulting in Death—Recklessly are:
> 1. That the defendant,
> 2. in the State of Colorado, at or about the date and place charged,
> 3. recklessly,
> 4. *permitted a child under the age of sixteen to be unreasonably placed in a situation that may have endangered the child's life or health*
> 5. *which resulted in the death* of the child.

*Id.* (emphasis added). The operative phrase of this instruction, "may have endangered," was contained in a number of no-longer-effective versions of the child abuse statute. From 1971 to 1980, the statute read:

> (1) A person commits child abuse if he knowingly, intentionally, or negligently, and without justifiable excuse, causes or permits a child to be:
> (a) *Placed in a situation that may endanger its life or health;* or
> (b) Exposed to the inclemency of the weather; or
> (c) Abandoned, tortured, cruelly confined or cruelly punished; or
> (d) Deprived of necessary food, clothing, or shelter.

1971 Colo. Sess. Laws, ch. 121, 448 (emphasis added).

In *Hoehl,* to save the statute from being unconstitutionally vague, we construed the language "may endanger" to mean "there is a reasonable probability that the child's life or health *will be* endangered," and we required that the court give the jury an instruction using this phraseology. 193 Colo. at 560, 568 P.2d at 486 (emphasis added).

Apparently taking the problems identified by *Hoehl* into account, the General Assembly in 1980 repealed and reenacted the child abuse statute. It added an additional "endanger" provision alongside the "may endanger" provision, and added complex penalty provisions based on mental state and level of injury to the child.

That revised statute read:

> A person commits child abuse if he knowingly, recklessly, or through criminal negligence, and without justifiable excuse, causes or permits a child to be
> (a) Placed in a situation that *endangers* the child's life or health or
> (b) Placed in a situation that *may endanger* the child's life or health, or
> (c) Exposed to the inclemency of the weather; or
> (d) Abandoned, tortured, cruelly confined, or cruelly punished; or
> (e) Deprived of necessary food, clothing or shelter.

1980 Colo. Sess. Laws, ch. 93, 544 (emphasis added).

In *People v. Schwartz,* 678 P.2d 1000 (Colo. 1984), we analyzed this version of the statute to determine whether the "may endanger" and "endanger" clauses punished the same behavior with different penalties, thereby violating equal protection guarantees. After analyzing the complex penalty provisions and the history of the statute, we concluded that the legislature must have intended the "may endanger" clause to apply only to those instances where no injury or death occurred.

The next year, the General Assembly repealed that statute and enacted the present one. *See* 1985 Colo. Sess. Laws, ch. 154, 672–73. It deleted all references to "may endanger" or "endanger" and defined the offense to include "causing injury" or permitting the child "to be unreasonably placed in a situation that poses a threat of injury to the child's life or health."

Two purposes of the new legislation were to (1) eliminate the phrases "may endanger" and "endanger" that had resulted in confusion, and (2) create an understandable definition of child abuse. *See Hearing on S.B. 85–42 Before the Senate Judiciary Comm.,* 55th Gen. Assem., 1st Sess. (January 8, 1985)(statements of Senator Ezzard).

**B.**

**Plain and Reversible Error in This Case**

Our decisions in *Hoehl* and *Schwartz* control our decision here. In *Hoehl,* we pointed out that the words "may endanger" introduced a broad and vague spectrum of speculative causal possibilities:

> Normally, "may" means "be in some degree likely," Merriam–Webster's New International Dictionary (Third Edition) p. 1396, "expressing ability, competency, liberty, permission, possibility, probability or contingency." Black's Law Dictionary 1131 (4th rev. ed.1968). So construed, we seriously doubt whether "may" in a criminal statute provides a fair description of the prohibited conduct, since virtually any conduct directed toward a child has the possibility, however slim, of endangering the child's life or health.

*Hoehl,* 193 Colo. at 560, 568 P.2d at 486 (citations omitted). To render the statute constitutional, we interpreted the offense to provide that "there is a reasonable probability that the child's life or health *will be* endangered from the situation in which the child is placed." *Id.* at 560, 568 P.2d at 485 (emphasis added). We reversed Hoehl's conviction because an instruction corresponding with this construction of the statute had not been given to the jury. *Id.* at 561, 568 P.2d at 487. In *Schwartz,* based on the General Assembly's intent in reformulating the statute subsequent to *Hoehl* and prior to its yet-again reformulation in 1985, we held that the "may endanger" language applied only to situations where an injury did not actually occur, rendering the offense a class 3 misdemeanor. 678 P.2d at 1007.

In the case now before us, the trial court's jury instruction erroneously re-introduced into Weinreich's trial the same "may endanger" language which we disapproved in *Hoehl,* and limited to a misdemeanor offense in *Schwartz* based on the General Assembly's intent.

The trial court did not instruct Weinreich's jury using an instruction that conformed to the statute in effect at the time of the offense under which the prosecution charged him. However, a correct jury instruction was readily available. *See* CJI Crim. 22:04 (Pocket Part 1993). In light of *Hoehl* and *Schwartz* and the General Assembly's choice to do away entirely with the "may endanger" language, the trial court committed plain error in giving an instruction for an offense that no longer existed and that materially deviated from the prosecution's charging document.

■ To constitute plain error, the trial court's error must be obvious and substantial and so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *See People v. Miller,* 113 P.3d 743, 750 (Colo. 2005). Weinreich must demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction. *See id.*

Here, as in *Hoehl,* the jury was presented with the "may have endangered" language that permitted it to convict Weinreich for actions creating any possibility of risk to the child that the jury might select, however remote such action might be to the injury. The General Assembly enacted the current statute to eliminate this phraseology as an offense in favor of defining the offense as "causing an injury" to the child's life or health or unreasonably posing a "threat of injury" to the child's life or health or engaging in a pattern of conduct amounting to medical neglect or mistreatment. *See Lybarger v. People,* 807 P.2d 570, 578 (Colo. 1991) ("The criminal proscriptions against child abuse are to protect children, who frequently are unable to care for themselves, from the risk of injury or death associated with conduct that places a child in a situation that poses a threat to the child's well-being.").

■ The instruction the trial court gave in this case deviated materially from the cur-

rent statute and permitted the jury to convict Weinreich of a non-existent offense. Under the "may have endangered" phraseology of the instruction, there is a reasonable possibility that the jury convicted Weinreich for behavior that was not causally connected to his daughter's death as contemplated by the information and section 18–6–401(1)(a) and (7)(a), C.R.S. (2004). The offense stated in the instruction is plainly not within one of the alternative ways of committing the crime currently proscribed by section 18–6–401(1)(a).

■ Accordingly, under the circumstances of this case, the court of appeals was correct in concluding that the jury instruction stated an obsolete offense and constituted an erroneous and prejudicial constructive amendment to the charge the prosecution brought against Weinreich. *Weinreich,* 98 P.3d at 923. Neither the information nor the current statute contemplated a possible conviction of child abuse resulting in death based on the obsolete "may endanger" formulation of an offense that no longer exists. Here, as opposed to *People v. Madden,* 111 P.3d 452, 455 (Colo.2005), the information did not place Weinreich on notice that he would have to defend against the charge actually submitted to the jury. *People v. Rodriguez,* 914 P.2d 230, 257 (Colo.1996).

It is axiomatic that a defendant must be convicted of a crime that exists. *See generally Sawyer v. People,* 173 Colo. 351, 353–54, 478 P.2d 672, 674 (1970). The use of the word "unreasonably" in the trial court's instruction did not cure re-introduction of the long-disapproved "may have endangered" language, because the instruction as a whole exposed Weinreich to conviction for an act that the jury may have perceived as endangering the child's life or health but which did not cause his daughter's death.

### III.

Accordingly, we affirm the judgment of the court of appeals which reversed Weinreich's conviction for child abuse resulting in death under section 18–6–401(1)(a) and (7)(a)(I).

Justice COATS dissents, and Justice KOURLIS and Justice RICE join in the dissent.

Justice COATS, dissenting.

The majority reverses a conviction (and 26–year sentence) for child abuse resulting in the death of the defendant's daughter, on the grounds that a jury instruction, which the defendant apparently found acceptable at trial, amounted to "plain and reversible error." By conflating two distinct legal doctrines, developed to protect against substantially different dangers, the majority fails to demonstrate a violation of either; and after mischaracterizing or misapplying the current statute, the instructions that were actually given in this case, and several previous holdings of this court, it simply declares victory and reverses the jury's verdict. For a host of reasons, I consider the majority's holding both legally flawed and patently offensive to reasonable jurors. I therefore respectfully dissent.

We granted a writ of certiorari to review the court of appeals holding that by instructing the jury on the elements of child abuse in language that differed from the language used in the charging document, the trial court constructively amended the charge; and despite the defendant's failure to object, this error rose to the level of "plain error," by occurring after the close of the evidence, when the defendant could no longer alter his defense. Sometime after the court of appeals opinion in this case, we made clear that any variance between a charge and subsequent jury instruction is error only to the extent that it deprives the defendant of his constitutional right to be advised of the charges against him and have a fair and adequate opportunity to prepare a defense and be protected from further prosecution. *See People v. Madden,* 111 P.3d 452, 456–57 (Colo.2005). Rather than disapproving the court of appeals pre-*Madden* rationale, and addressing the defendant's claim of constructive amendment in terms of our holding in *Madden,* however, the majority seizes upon a minor instructional deviation from the words of the statute, never objected to or considered significant by any party, and hopelessly confuses the question of notice with the history and definition of the crime of child abuse itself.

On the one hand, the majority appears to hold that instructing with the words, "may have endangered," constituted "an erroneous and prejudicial constructive amendment to the charge." *See* maj. op. at 1079. On the other, it holds that by using these words the instruction "deviated materially from the current statute and permitted the jury to convict Weinreich of a non-existent offense." *See* maj. op. at 1079. Confused as this commingling of rationales may be, it at least seems clear that the majority's holding—whether based on lack of notice or lack of a crime at all—depends on its understanding of this court's construction of similar words, as they appeared in former, and substantially different, statutory schemes.

Although of questionable significance, the majority notes our holding in *People v. Schwartz*, 678 P.2d 1000 (Colo.1984), limiting the applicability of the "may endanger" provision of the 1980 statute to those instances of child abuse in which no injury or death actually occurred. This narrowing construction responded to an equal protection challenge to the legislature's juxtaposition of "may endanger" and "endanger" in separate, and disparately punished, proscriptive provisions of the then-existing statute. It could have significance only for the peculiar organization of that statutory scheme; and the legislature clearly abandoned both terms immediately thereafter, not for any inherent ambiguity in or distinction between the terms themselves, but to avoid confusion that might result from our strained construction in *Schwartz*. Even the majority does not appear to suggest that the phrase, "may have endangered," could have been understood by this jury to exclude cases of death or injury, which would, of course, have resulted in an acquittal.

Of somewhat clearer relevance to its rationale, the majority also relies on our holding in *People v. Hoehl*, 193 Colo. 557, 568 P.2d 484 (1977). In order to prevent conviction for any possibility of endangerment, however slim, we there construed the word, "may," modifying "endanger" in the 1971 version of the statute, to mean a "reasonable probability" of endangerment to the child's life or health. *See id.* at 560, 568 P.2d at 486. Notwithstanding the majority's suggestion to the contrary, however, we clearly did not disapprove the "may endanger" language of the statute. *See* maj. op. at 1075. Addressing a constitutional vagueness challenge, where the trial court refused a request to instruct on the meaning of "may endanger," despite the defendant's claim that he merely suggested that the child-victim warm her hands over a radiator, we held only that the defendant was entitled to an instruction limiting the statutory language to a reasonable probability of endangerment.

More importantly, however, despite the "may have endangered" language of the instruction in this case, the jury was not instructed on the elements of an "obsolete" version of the statute. In addition to bringing the various descriptions of conduct constituting child abuse together in a single definition and subsection of the statute, and replacing both "may endanger" and "endanger" with "poses a threat of injury," the 1985 amendments at issue here expressly codified the "reasonable probability" limitation of *Hoehl* by predicating criminal liability on the child being "unreasonably" placed in a situation that poses a threat. Permitting a child to be placed in a situation posing a threat involving less than a "reasonable probability" of injury is clearly not unreasonable, and therefore no longer punishable as child abuse under the current statute.

By characterizing the use of the phrase, "may have endangered," as instructing on an obsolete offense, the majority ignores the fact that, in sharp contrast to the 1971 statute at issue in *Hoehl*, the jury in this case was instructed to find guilt only if the defendant permitted the child to be "unreasonably" placed in a situation that may have endangered her life or health. To the extent that the majority considers the General Assembly's additional requirement of *unreasonable* placement to inadequately codify the "reasonable probability" limitation of *Hoehl*, it necessarily implies that the existing statutory language suffers from the same shortcoming identified in *Hoehl*, and presumably entitles a defendant to the same, additional, court-fashioned limiting instruction.

Whether this is so or not, however, in no event could a finding that the defendant recklessly permitted the child to be unrea-

sonably placed in a situation that "may have endangered" her life or health be substantially and prejudicially different from a finding that he recklessly permitted her to be unreasonably placed in a situation that "pose[d] a threat of injury" to her life or health. Both phrases communicate the same concept of risk, and both are limited as to degree of risk or likelihood of danger only by the identical requirement of reasonableness. For all intents and purposes, the phrases are synonymous.

While jury instructions that track the language of a statute will usually be proper and (as this case adequately demonstrates) may reduce later disputes over propriety and accuracy, there clearly has never existed in this jurisdiction any technical requirement for juries to be instructed in the precise language of even an elemental or definitional statute. *See, e.g., Leonard v. People,* 149 Colo. 360, 374, 369 P.2d 54, 62 (1962) (noting that statutory language itself may tend to create ambiguities or confusion in minds of jurors). Nuance in instructing juries is notoriously tactical, and a failure to request specific statutory language makes it far more likely that a defendant did not consider a deviation particularly meaningful or disadvantageous.

In order to rise to the level of plain error, an instruction accepted without objection must therefore not only fail to properly communicate the law to the jury, but its failure to do so must also be obvious and have a substantial impact on the fairness of the trial. Although I do not believe the "may have endangered" language of the instruction failed (in any respect, much less one having a substantial impact on the fairness of the trial) to properly convey the statutory definition of child abuse to the jury, the majority's resort to 20 and 30-year-old interpretations of previous, and vastly different, versions of the statute, responding at the time to wholly dissimilar legal challenges, to my mind should alone be sufficient to demonstrate that any deficiency in the instruction (should one exist) was not one that should have been readily apparent to a trial judge, without having it brought to his attention by an interested party.

Finally, unlike the majority I consider it clear that a defendant charged with the stat-

utory offense of child abuse, by recklessly causing an injury to the life or health of his child, who was indisputably killed when she was thrown from her unbelted position in his lap while he was driving, has been put on notice that he may have to defend against the more specific allegation of recklessly permitting her to be unreasonably placed in a situation that may have endangered her life or health. I would therefore find that the court of appeals not only applied an erroneous legal standard but also reached the wrong result.

I respectfully dissent.

I am authorized to state that Justice KOURLIS and Justice RICE join in this dissent.