22CA1391 Peo v Barkers 11-27-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1391
Arapahoe County District Court No. 20CR117
Honorable Joseph Whitfield, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Lawrence Jerome Barkers,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Grove and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

Philip J. Weiser, Attorney General, Cata A. Cuneo, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Barbara A. Snow, Alternate Defense Counsel, Longmont, Colorado, for Defendant-Appellant

¶ 1     Defendant, Lawrence Jerome Barkers, appeals the judgment of conviction entered on jury verdicts finding him guilty of three counts of first degree burglary, one count of aggravated robbery, one count of conspiracy to commit first degree burglary, and three counts of menacing. We affirm.

## I.    Background

¶ 2     On October 19, 2019, Aaron Starks' bike was stolen. Starks asked Barkers to help him find his bike. Starks believed that Angel Garcia stole his bike, so they drove to Christina Garcia's house, where they believed Angel[1] lived with his family.

¶ 3     When Barkers and Starks arrived at the house, Christina was inside with Anthony Garcia, Adrian Garcia, Andy Garicia, Amelia Manglona, and another of Christina's friends. Angel was not home. Christina and her family were sitting in the family room when they saw Barkers and Starks approach. Christina noticed that the driver of the car, later identified as Barkers, had a gun in his hand. While multiple family members fled to the basement, Christina and her two sons, Andy and Anthony, remained in the living room.

---

[1] We refer to members of the Garcia family by their first names since they share the same last name and mean no disrespect.

¶ 4     After Barkers and Starks entered her house, Barkers pointed a gun and threatened Christina, Andy, and Anthony.  Starks yelled that he wanted his bike back and threatened to shoot Angel if he did not get it back by five o'clock that day.  Barkers also threatened to return and shoot up the house.  Barkers and Starks then took Christina's phone and a Nintendo Switch as "collateral" for the stolen bike and left.  Anthony called 911.

¶ 5     The prosecution charged Barkers with six counts of first degree burglary, two counts of aggravated robbery, conspiracy to commit first degree burglary, conspiracy to commit aggravated robbery, five counts of menacing, three counts of possession of a weapon by a previous offender, two counts of theft, violation of bail bond conditions, and ten crime of violence sentence enhancers.  A jury convicted him of three counts of first degree burglary, one count of aggravated robbery, one count of conspiracy to commit first degree burglary, and three counts of menacing.  At sentencing, the trial court vacated two of the three first degree burglary convictions under *People v. Fuentes*, 258 P.3d 320 (Colo. 2011).  The court then found the crime of violence sentence enhancers had

been proved and sentenced Barkers to twenty years in the custody of the Department of Corrections.

¶ 6    Barkers challenges his convictions on two grounds: (1) the prosecution presented insufficient evidence to prove, beyond a reasonable doubt, that he possessed a real gun when he entered Christina's house; and (2) the prosecution engaged in misconduct. We address and reject both contentions.

## II.    Sufficiency

¶ 7    Barkers contends there was insufficient evidence that he possessed a real gun when he entered Christina's house.  We disagree.

### A.    Additional Facts

¶ 8    The trial evidence showed the following:

- Starks testified that Barkers drove the car to Christina's house.  Starks said Barkers had a Glock handgun with an "extended drum" and that he pointed the gun at the individuals in the living room.  Starks also said Barkers threatened to come back and shoot up the house if Starks did not return his bike.

- Christina testified that the driver had a gun in his hand when he approached her house. Once inside, he pointed the gun at her. Christina said she was afraid that he would shoot someone in her family. She said the man with the gun threatened to shoot up the house if Angel did not return the bike by five o'clock. She also described being two to three feet from the gun and said the gun was black and had an extended clip. Christina identified Barkers as the man with the gun in a photo lineup two weeks after the incident. Christina also identified Barkers as the man with the gun at trial.
- Andy testified that he called 911 because a man came into his house with a gun and pointed it at his family.
- Anthony testified that when the two men arrived outside his house, he looked out the window and saw Barkers "cock [a] gun back."
- Adrian testified that one of the men who entered the house had a gun. He said the person with the gun pointed the gun at him and his family members.

4

- Manglona, who had previously lived with Starks, testified that the driver of the car "cocked the gun back" as he walked up to the house. She said Starks was not the car's driver.

- Charles Walker, a neighbor from across the street, testified that the driver of the car had a weapon and identified Starks as the passenger. He heard screaming coming from the Garcias' house.

- Detective Katie Maines testified that Christina had described Barkers' weapon as a "real gun with an extended magazine." Christina told her she was scared, and she thought that Barkers was going to use the gun. Anthony and Amelia also told police they thought the gun was real. Detective Maines said Starks did not seem to be very familiar with firearms because he had trouble describing guns in general and initially believed it was a large plastic gun. When asked why he thought it was plastic, Starks responded, "I don't know."

## B.     Standard of Review and Controlling Law

¶ 9     We review sufficiency of the evidence de novo.  *McCoy v. People*, 2019 CO 44, ¶ 27.  In assessing the sufficiency of the evidence to support a conviction, we employ the substantial evidence test to determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt.  *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010).  We must give the prosecution the benefit of every reasonable inference that may be fairly drawn from the evidence.  *People v. Duran*, 272 P.3d 1084, 1090 (Colo. App. 2011).

¶ 10     "The pertinent question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Clark*, 232 P.3d at 1291.  The jurors are entrusted with resolving the weight and credibility of the evidence.  *People v. McGlotten*, 166 P.3d 182, 188 (Colo. App. 2007).

¶ 11     Although a verdict "cannot be supported by guessing, speculation, conjecture, or a mere modicum of relevant evidence,"

the reviewing court "should not attempt to 'serve as a thirteenth juror or invade the province of the jury'" by weighing conflicting evidence. *People v. Perez*, 2016 CO 12, ¶ 25 (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)). "Where reasonable minds could differ, the evidence is sufficient to sustain a conviction." *People v. Carlson*, 72 P.3d 411, 416 (Colo. App. 2003).

¶ 12    A person commits first degree burglary if

> the person knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in a building or occupied structure with intent to commit therein a crime, other than trespass as defined in this article, against another person or property, and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, the person or another participant in the crime assaults or menaces any person, the person or another participant is armed with explosives, or the person or another participant uses a deadly weapon or possesses and threatens the use of a deadly weapon.

§ 18-4-202(1), C.R.S. 2024.

¶ 13    In relevant part, a person commits aggravated robbery if, during the act of robbery or the immediate flight therefrom, "[h]e is armed with a deadly weapon with intent, if resisted, to kill, maim,

7

or wound the person robbed or any other person." § 18-4-302(1)(a), C.R.S. 2024.

¶ 14    A person commits the crime of menacing if "by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury." § 18-3-206, C.R.S. 2024.

¶ 15    The prosecution may prove the crime of violence enhancer, under section 18-1.3-406(2)(a)(I)(A), C.R.S. 2024, by showing that the defendant "[u]sed, or possessed and threatened the use of, a deadly weapon."  As relevant here, "[d]eadly weapon" is defined as "[a] firearm, whether loaded or unloaded." § 18-1-901(3)(e)(I), C.R.S. 2024.

### C.    Analysis

¶ 16    Based on the evidence adduced at trial, we conclude the prosecution presented sufficient evidence that Barkers possessed a real firearm.  As described above, numerous witnesses saw Barkers with a gun; two witnesses saw him "cock the gun" as he approached the house; and his codefendant, Starks, described the gun as a Glock with an "extended drum."  We are not persuaded that Starks' statement to the police that the gun was plastic, or his lack of

8

familiarity with guns, affects the outcome. As Barkers concedes in his brief, this evidence "cuts both ways." And we must view the evidence in the light most favorable to the prosecution and resolve all conflicts in the evidence in favor of the prosecution. *Clark*, 232 P.3d at 1291.

¶ 17 Accordingly, we conclude the record contains sufficient evidence that Barkers possessed a real firearm and, thus, that sufficient evidence supports the first degree burglary, aggravated robbery, and menacing convictions, as well as the crime of violence sentence enhancers.

### III. Prosecutorial Misconduct

¶ 18 Barkers next contends that the prosecutor committed misconduct when she (1) misstated the evidence and (2) improperly bolstered Starks' testimony. We disagree.

### A. Standard of Review and Applicable Law

¶ 19 "Whether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion." *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). We will not disturb the trial court's rulings regarding such a statement absent a showing of abuse of discretion. *People v. Strock*, 252 P.3d

1148, 1152 (Colo. App. 2010). A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or is based on a misunderstanding or misapplication of the law. *People v. Snelling*, 2022 COA 116M, ¶ 31.

¶ 20 Where, as here, a defendant does not object at trial, we review whether an error requires reversal under the plain error standard. *People v. James*, 117 P.3d 91, 95 (Colo. App. 2004). "To constitute plain error, misconduct must be flagrant or glaring or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004), *aff'd*, 119 P.3d 1073 (Colo. 2005). Prosecutorial misconduct in closing argument rarely constitutes plain error. *Id.*

¶ 21 When reviewing claims of prosecutorial misconduct, we conduct a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine "whether the prosecutor's questionable conduct was improper based on the totality of the circumstances." *Id.* In doing so, we consider the context of the argument as a whole and view it in the light of the evidence before the jury. *People v. Samson*, 2012 COA 167, ¶ 30. The prosecution

has wide latitude to make arguments based on facts in evidence and the reasonable inferences that can be drawn from those facts. *Strock*, 252 P.3d at 1153. The prosecution is permitted to use rhetorical devices and engage in oratorical embellishment. *Samson*, ¶ 31. Because arguments delivered in the heat of trial are not always perfectly scripted, we give the prosecution the benefit of the doubt when their remarks are ambiguous or simply inartful. *Id.* at ¶ 30. However, closing arguments cannot be used to mislead or unduly influence the jury. *Domingo-Gomez*, 125 P.3d at 1048-50. To that end, the prosecution may not intentionally misstate the evidence or the law, attempt to inflame the juror's passions or prejudices, or offer a personal opinion as to the defendant's guilt. *Id.* at 1049; *see also People v. Maloy*, 2020 COA 71, ¶ 61.

¶ 22 Second, if the comments were improper, we determine "whether such actions warrant reversal according to the proper standard of review." *Wend*, 235 P.3d at 1096.

### B. Analysis

#### 1. Misstating the Evidence

¶ 23 During Detective Maines' cross-examination, the following colloquy occurred:

DEFENSE COUNSEL: And during the course of your investigation, you learned one of the reasons that Mr. Starks believed Angel was the person that took his bike is because Angel chased him, correct?

DETECTIVE MAINES: I would say that Angel — I wouldn't use the word "chased," personally. I think confronted would be accurate.

DEFENSE COUNSEL: During the course of your investigation, did you find out that Angel pulled up on Mr. Starks' four deep?

DETECTIVE MAINES: Yes. That term was used.

DEFENSE COUNSEL: Four deep. Did you learn during the course of investigations — when I say "four deep," four other people with Angel?

DETECTIVE MAINES: That was my understanding of the phrase, yes.

DEFENSE COUNSEL: And during the course of your investigation, did you learn that Angel pulled up on him four deep with guns?

DETECTIVE MAINES: Yes.

¶ 24    In rebuttal argument, the prosecutor argued, without objection,

> [Barkers] knew that Aaron [Starks] had been involved in a confrontation earlier that day with Angel. Defense counsel came up here and said, Yup, Angel chased him and they all

12

had guns.  Came in four deep with assault
rifles.

So you're telling me that Mr. Barkers knows
about the theft; knows that Mr. Starks is
angry; knows that there is a prior
confrontation; knows that there were assault
rifles involved; didn't know where he was
going; didn't know whose house it was and
they want you to believe that he took a plastic
gun, took a plastic gun to a place where people
with assault rifles could have been?  That
doesn't make sense, ladies and gentlemen.
You know why?  Because he had a gun and it
was real.

¶ 25    The prosecutor later argued, without objection, "Direct evidence.  You have the testimony of the assault rifles."

¶ 26    Finally, the prosecutor argued, "But it was not a fake gun, because Mr. Barkers was planning on going and getting the bike, and you do not take a plastic gun to a fight with assault rifles."

¶ 27    Barkers contends that the prosecutor's references to "assault rifles" are not supported by the record.  We agree.  Nevertheless, we conclude the statements did not so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction, for three reasons.  *See People v. Smith*, 2018 CO 33, ¶ 24.

¶ 28 First, the issue at trial concerned whether *Barkers'* gun was real, while the assault rifle statements related to weapons Angel possessed when he "pulled up" on Starks previously. Thus, the assault rifle misstatements did not directly relate to an element of the crimes charged that the prosecution was required to prove. *Cf. People v. McBride*, 228 P.3d 216, 225 (Colo. App. 2009) (argument that was an obvious misstatement of the deliberation element constituted plain error). Moreover, we conclude there was overwhelming evidence that Barkers possessed a real firearm, based on the witnesses' testimony, and disagree with Barkers that this was a close question. *See People v. Estes*, 2012 COA 41, ¶¶ 39, 42 (prosecutorial misconduct in closing argument didn't warrant reversal because, among other things, overwhelming evidence supported the guilty verdict).

¶ 29 Second, the record shows that the prosecutor accurately described the facts forming the basis of the charges when discussing the elements of the crimes charged. *See Domingo-Gomez*, 125 P.3d at 1050 ("Factors to consider when determining the propriety of statements include the language used, the context in which the statements were made, and the strength of

14

the evidence supporting the conviction."); *see also People v. Denhartog*, 2019 COA 23, ¶ 66 (No plain error where the prosecutor's inaccurate characterization of a witness' testimony "did not 'predominate over those parts of the argument that appropriately address[ed] the evidence and the prosecution theory of the case.'" (quoting *People v. Eckert*, 919 P.2d 962, 967 (Colo. App. 1996))).  Further, the jury heard Detective Maines' testimony that referred to the weapons carried in the earlier confrontation as guns.  *See Samson*, ¶ 30 ("We must evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury.").

¶ 30     Third, Barkers did not object to the assault rifle references, indicating counsel's belief that the live argument was not overly damaging.  *See People v. Cardova*, 293 P.3d 114, 122 (Colo. App. 2011) (citing *People v. Villa*, 240 P.3d 343, 356 (Colo. App. 2009)).  Therefore, while we find an error, we conclude the error does not require reversal.  *See Weinreich*, 98 P.3d at 924.

## 2.    Improper Bolstering

¶ 31    In his initial statement to the police, Starks stated that the gun was a large plastic gun.  But at trial, Starks testified that Barkers had a Glock with an "extended drum."

¶ 32    Additionally, during Starks' direct examination, the prosecutor elicited the details of his plea agreement in the following colloquy:

> PROSECUTION: Is it your understanding that as a part of this plea agreement you are required to cooperate in the trial against Mr. Barkers?
>
> STARKS: Yes.
>
> PROSECUTION: And is it your understanding that part of your plea agreement requires you to provide truthful testimony during the trial?
>
> STARKS: Yes.
>
> PROSECUTION: And is it your understanding that if you were to provide any false information, that would constitute a breach of the plea agreement and the offer could be withdrawn?
>
> STARKS: Yes.

¶ 33    During closing, the prosecutor argued,

> You have the testimony from every witness that saw the gun.  They described what the gun looked like.  And defense counsel wants to pick one piece of testimony from Mr. Starks that occurred the day of the incident, where he

16

> is talking to the police, he is trying to minimize because it did not go as planned, then he says plastic gun.

We are not convinced that the direct examination or the closing argument constitutes improper bolstering, for two reasons.

¶ 34 First, prosecutors have wide latitude to make arguments based on facts in evidence and the reasonable inferences that can be drawn from those facts. *Strock*, 252 P.3d at 1153. The fact that Starks downplayed the incident and minimized his involvement in his initial police statement is a reasonable inference drawn from Detective Maines' testimony that Starks initially described the gun as plastic but could not explain why he thought that.

¶ 35 Second, the terms of a plea agreement between the prosecution and a witness, including the plea's requirement that the witness provide "truthful testimony," are admissible, at least where the prosecutor does not express an opinion that the witness actually told the truth, and there is no suggestion that the prosecutor possesses information unavailable to the jury. *People v. Coughlin*, 304 P.3d 575, 582-83 (Colo. App. 2011).

¶ 36 Here, the prosecutor elicited the terms of Starks' plea agreement but never opined that his testimony was truthful and

never argued the terms of the plea agreement as evidence of guilt in closing. Moreover, the prosecutor never suggested that she possessed information that was unavailable to the jury.

¶ 37    Accordingly, we discern no improper bolstering.

## IV.    Disposition

¶ 38    The judgment is affirmed.

JUDGE GROVE and JUDGE LUM concur.