The PEOPLE of the State of Colorado, Petitioner/Cross–Respondent,

v.

**Louis A. MADDEN, Respondent/Cross–Petitioner.**

No. 03SC771.

Supreme Court of Colorado, En Banc.

April 18, 2005.

Rehearing Denied May 16, 2005.*

---

cient to satisfy any requirement that Koca have a connection to the business.

* Justice MARTINEZ and Justice BENDER would grant the petition; Justice COATS does not participate.

John W. Suthers, Attorney General, John J. Fuerst III, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, for Petitioner/Cross–Respondent.

David S. Kaplan, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Respondent/Cross–Petitioner.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

In this case, we consider Louis Madden's convictions for attempted third degree sexual assault and attempted patronizing of a prostituted child. On appeal, Madden claimed that he was deprived of his constitutional right to know the nature and cause of the charges against him due to a difference between the charging document and the jury instructions in the description of third degree

sexual assault. Madden also argued that he could not be convicted of attempted patronizing a prostituted child because there was no evidence that the victim received or that Madden gave anything of value in exchange for sex. In *People v. Madden*, 87 P.3d 153 (Colo.App.2003), the court of appeals reversed Madden's conviction for attempted third degree sexual assault, but upheld the conviction for attempted patronizing of a prostituted child.

Contrary to the court of appeals, we conclude that the information adequately notified Madden that he should be prepared to defend against evidence of attempted third degree sexual assault as it was described in the jury instructions. Consequently, his constitutional right to notice was not violated and we uphold his conviction for attempted third degree sexual assault. We also find that the crime of patronizing a prostituted child requires that the defendant must either give or receive something of value in exchange for sex with the child. Because no evidence was presented that Madden gave or the victim received anything of value in exchange for sex, his conviction for attempted patronizing of a prostituted child was in error. Accordingly, we reverse the court of appeals' decision.

## II. Facts and Proceedings Below

On her way from school, S.J., a fourteen-year old girl, boarded the Durango Lift Trolley. As she was boarding, the driver said something to her to the effect of "a pretty young girl like you should have sex with me." S.J. responded "excuse me?" and sat in the back of the bus. After the only other passenger on the trolley disembarked, the driver made an unscheduled stop, approached S.J., and asked her to stand so that he could retrieve something from under her seat. When she stood, the driver pushed her against the window of the trolley, started kissing her neck, and said "Damn it, take your pants off." He then proceeded to un-

buckle his pants and lift up S.J.'s shirt. S.J. testified that she felt his penis on her stomach and then "something wet." At that point, another passenger boarded the trolley, and the driver returned to his seat.

S.J. told her foster mother about the incident two weeks later. There is some discrepancy over the date the incident occurred. S.J. wrote on her calendar on January 20, 2000, "the guy that [sic] did something to me on the trolley." S.J.'s foster mother also noted on her daily log of S.J.'s behavior that S.J. acted "upset" and "angry" on January 20, 2000. Based on these calendar entries, S.J. was shown a photographic line up including drivers who worked on January 20, 2000. She was unable to make an identification out of this line up. Madden drove the trolley on January 21, 2000. His photograph was included in a second line up, and S.J. selected him as the perpetrator.

Madden was subsequently charged with: (1) attempted sexual assault on a child by one in a position of trust;[1] (2) attempted patronizing a prostituted child;[2] and (3) attempted third degree sexual assault.[3] The trial judge dismissed the first charge and a jury convicted Madden of the second and third charges. Madden appealed.

The court of appeals reversed Madden's conviction for attempted third degree sexual assault and affirmed his conviction for attempted patronizing a prostituted child. *Madden*, 87 P.3d at 159. With respect to the conviction for attempted third degree sexual assault, the court held that the trial court committed per se reversible error "[b]ecause the jury instruction for third degree sexual assault required proof of an alternative method of committing the crime not contemplated by the information." *Id.* at 157. The information alleged that Madden committed attempted third degree sexual assault by engaging in conduct constituting a substantial step toward "induc[ing] or coerc[ing] a child, ... to expose intimate parts."[4] By contrast,

---

1. §§ 18–2–101, 18–3–405.3(1) & (2), 6 C.R.S. (1999).

2. §§ 18–2–101, 18–7–406(1)(a), 6 C.R.S. (1999).

3. §§ 18–2–101, 18–3–404(1.5), 6 C.R.S. (1999).

4. In full, the information alleged that Madden "did attempt to unlawfully, feloniously and knowingly, with or without sexual contact, induce or coerce a child, namely S.J., through the actual application of physical force or physical violence, or by means of sufficient consequence

the jury instructions defined attempted third degree sexual assault as engaging in conduct constituting a substantial step toward "knowingly subject[ing] a person to any sexual contact." [5] The court of appeals was persuaded that the change in language violated Madden's constitutional rights by requiring him to "answer a charge not contained in the charging documents." *Id.* (citing *Schmuck v. United States,* 489 U.S. 705, 717, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989)). The court further found that the error required per se reversal.

With respect to the conviction for attempted patronizing a prostituted child, the court found that the statutory language defining the offense was unambiguous and that the statute applied irrespective of whether the defendant "attempted to have the victim act as a 'prostitute.'" *Id.* at 156. Under the court of appeals' holding, all that is required to be convicted of attempted patronizing a prostituted child is that the defendant takes a "substantial step toward inducing the victim to perform a sexual act." *Id.* The court therefore held that the evidence presented was sufficient to support Madden's conviction.

We granted the People's petition for certiorari review of the court of appeals' reversal of Madden's conviction for attempted third degree sexual assault. We also granted Madden's cross-petition for certiorari regarding his conviction for attempted patronizing a prostituted child.[6] We now reverse the court of appeals on both issues, upholding the conviction for attempted third degree sexual assault, but reversing Madden's conviction for attempted patronizing a prostituted child.

## III. Analysis

### A. Difference in the Description of Attempted Third Degree Sexual Assault

■ We begin by examining Madden's contention that the difference in the description of third degree sexual assault between the charging document and the jury instructions violated his constitutional rights. Although the briefs concentrated on whether the difference was per se reversible error or must be analyzed under plain error, we must first determine whether it amounted to error at all.

The United States and Colorado Constitutions guarantee a defendant the fundamental right to be notified of the charges made against him. *U.S. Const.* amend. VI; *Colo. Const.* Art. II, Sec. 16; *People v. Cooke,* 186 Colo. 44, 46, 525 P.2d 426, 428 (1974). In Colorado, notice is accomplished through the filing of an indictment, complaint, or information. § 16–5–101, C.R.S. (2004). Madden was notified of the charges against him by information. Because the notice requirement lies at the foundation of the due process of law, a defendant cannot be required to answer a charge not contained in the information. *Schmuck,* 489 U.S. at 717, 109 S.Ct. 1443; *People v. Rodriguez,* 914 P.2d 230, 257 (Colo. 1996).

Madden was charged with attempted third degree sexual assault. §§ 18–2–101 & 18–3–

reasonably calculated to cause submission against the victim's will, when at the time of the commission of the act, the victim was less than eighteen years of age to expose intimate parts for the purpose of the defendant's own sexual gratification."

5. The jury instruction setting forth the elements for third degree sexual assault by force stated:
The elements of the crime of Third Degree Sexual Assault by Force are:
1. That the defendant,
2. in the State of Colorado, at or about the date and place charged
3. knowingly subjected a person to any sexual contact, and
4. the defendant caused submission of that person by,

 5. the actual application of physical force or physical violence.

6. We granted certiorari on the following two issues submitted by the People and by Madden respectively:
1. Whether submitting to the jury an alternative method of committing a crime, instead of the method charged in the information, constitutes per se reversible error.
2. Whether the evidence was insufficient to support the conviction for attempted patronizing a prostituted child and whether the court of appeals erred in holding that there is no requirement that the child be acting as a "prostitute" for a conviction of attempted patronizing a prostituted child.

404(1.5). Section 18–3–404(1.5) sets forth the crime of third degree sexual assault as follows:

> Any person who knowingly, *with or without sexual contact,* induces or coerces a child by any of the means set forth in section 18–3–402 or 18–3–403 *to expose intimate parts or to engage in any sexual contact,* intrusion, or penetration with another person, for the purpose of the actor's own sexual gratification, commits sexual assault in the third degree.

(emphasis added).[7] This statute prohibits two forms of conduct-inducing a child to expose intimate parts, with or without sexual contact, and inducing a child to engage in any sexual contact. The information charging Madden with attempted third degree sexual assault highlighted .the first form of conduct. Specifically, the information charged Madden with "engaging in conduct constituting a substantial step toward its commission, namely, defendant did attempt to unlawfully, feloniously and knowingly, *with or without sexual contact,* induce or. coerce a child, . . . to expose intimate parts." (emphasis added) The information cited the attempt statute, section 18–2–101, and the third degree sexual assault statute, section 18–3–404(1.5), as the basis for the charge against Madden.

The jury instructions, on the other hand, incorporated the second form of prohibited conduct. The instructions for attempted third degree sexual assault stated that the elements of that offense were:

1. ˙ That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. with the intent to commit the crime of Third Degree Sexual Assault by Force,
4. engaged in conduct constituting a substantial step toward the commission of Third Degree Sexual Assault by Force.

In contrast to the information, the jury instruction advised that Madden committed third degree sexual assault if he "knowingly

subjected a person to any sexual contact."[8] Madden asserts that the difference between the information and the instructions amounted to a change in the essential elements of the crime charged. He alleges that the change compelled him to answer a charge not contained in the charging instrument, thereby depriving him of his constitutional right to be notified of the charges against him. An examination of the crime charged in the information confirms that Madden received constitutionally adequate notice.

▮ To satisfy the constitutional requirement, the notice given by the information "must be sufficient to advise the accused of the charges, to give him fair and adequate opportunity to prepare his defense, and to ensure that he is not taken by surprise because of evidence offered at the time of trial." *Cooke,* 186 Colo. at 46, 525 P.2d at 428. The notice requirement is also intended to protect the defendant from further prosecution for the same offense. *People v. Williams,* 984 P.2d 56, 60 (Colo.1999). The description of attempted third degree sexual assault provided by the information was sufficient to allow Madden to prepare a defense against the offense as described in the jury instructions. It was also sufficient to protect Madden from double jeopardy.

Because Madden was charged with attempted third degree sexual assault the prosecution only needed to prove that, with the intent to commit third degree sexual assault, he took a substantial step toward committing such assault. Specifically, Madden was charged with taking a substantial step toward inducing a child to expose intimate parts, with or without sexual contact. The prosecution did not need to prove that Madden actually induced S.J. to expose intimate parts in order to convict Madden of the crime charged, only that he took a substantial step toward inducing her to do so. Because the assault as charged could be completed "with or without sexual contact," it was possible

---

7. The General Assembly amended section 18–3–404(1.5) in 2000 and the crime was renamed "unlawful sexual contact." *See* ch. 171, sec. 20, § 18–3–404(1.5), 2000 Colo. Sess. Laws 692, 700–01. No substantive changes were made to the relevant portion of the statute.

8. For the full text of the instruction, see footnote five.

that the prosecution would present evidence that the substantial step Madden took toward inducing S.J. to expose her intimate parts was some form of sexual contact.

Consequently, Madden was put on notice that he could potentially have to defend against allegations that he subjected S.J. to sexual contact in the course of attempting to induce her to expose intimate parts. From the language of the charging document, and the fact that he was charged with an attempt crime, Madden cannot claim that he was only prepared to defend against allegations that he caused the victim to expose her intimate parts. He had to be prepared to defend against charges of subjecting S.J. to sexual contact as well, because such contact could have been the substantial step he took toward inducing her to expose intimate parts. Thus, the information did contemplate that engaging in sexual contact was a possible method of committing the crime, and the court of appeals erred in concluding otherwise.

Furthermore, the information cited both the criminal attempt statute, section 18–2–101, and the third degree sexual assault statute, 18–3–404(1.5), as the basis for the charge. This citation directed Madden to the statute as a whole and provided further notice of both of the prohibited forms of conduct. See Cervantes v. People, 715 P.2d 783, 787 (Colo.1986) (The fact that the information cited the second degree assault statute as a whole would help defendant conclude which specific subsection he was being charged under, even though the information inadequately described that subsection.).

The charging document provided constitutional notice of the crime instructed. Madden was advised that sexual contact could be an element of the crime charged, he was given notice that he would need to prepare a defense to allegations of sexual contact, and could not argue that he was taken by surprise if evidence of sexual contact was presented. Accordingly, the change in description of third degree sexual assault between the jury instructions and the information did not deprive Madden of his Sixth Amendment rights. Because Madden received adequate notice, we reverse the ruling of the court of appeals and uphold Madden's conviction for attempted third degree sexual assault.

## B. Patronizing a Prostituted Child

■ We next turn to the issue of whether there was insufficient evidence to support Madden's conviction for patronizing a prostituted child pursuant to section 18–7–406, 6 C.R.S. (1999). Madden argues that this statute requires the prosecution to present evidence that he participated in some form of commercial transaction in exchange for sex with S.J. and that no such evidence was presented at trial.

The People contend that the court of appeals correctly held that the elements for the crime of patronizing a prostituted child are unambiguous and do not require the prosecution to prove that the child was acting as a prostitute to convict Madden of the offense. Consequently, the prosecution submits that the evidence was sufficient to convict.

■ We begin our analysis with a summary of the principles of statutory construction. The construction of a statute is a question of law that we review de novo. *Anderson v. Longmont Toyota, Inc.,* 102 P.3d 323, 326 (Colo.2004). In construing the meaning of a statute, we are to determine and give effect to the intent of the legislature. *M.S. v. People,* 812 P.2d 632, 635 (Colo.1991). To discern the legislative intent, we look first to the plain and ordinary meaning of the statutory language. *Mason v. People,* 932 P.2d 1377, 1378 (Colo.1997). We are to give effect to every word and are not to adopt a construction that renders any term superfluous. *Slack v. Farmers Ins. Exch.,* 5 P.3d 280, 284 (Colo.2000). In so doing, the statute is to be construed to further the legislative intent represented by the statutory scheme. *State v. Nieto,* 993 P.2d 493, 501 (Colo.2000). In addition, the title of a statute, although not dispositive of the legislative intent, can be useful in construing a statute. *Frazier v. People,* 90 P.3d 807, 811 (Colo.2004). Where the intended scope of a statute is ambiguous, we may look to the statute's textual context as well as the legislative history to determine the General Assembly's intent. § 2–4–203, C.R.S. (2004);

*Corbetta v. Albertson's, Inc.,* 975 P.2d 718, 721 (Colo.1999).

Turning to the words of the statute in this case, a person patronizes a prostituted child if he "[e]ngages in an act which is prostitution of a child or by a child." § 18–7–406, C.R.S. (2004).[9] While the statute does not define the term prostitution, the phrase "prostitution by a child" is statutorily defined as a child performing any act of sexual intercourse in exchange for money or anything of value. § 18–7–401(6), C.R.S. (2004).[10] The act of "prostitution by a child" embodies the common understanding of prostitution where someone gives money or something of value to another in exchange for sex. *See Black's Law Dictionary* 1259 (8th ed.2004) (defining prostitution as "engaging in a sexual activity for money or its equivalent; commercialized sex."); *see also* § 18–7–201, C.R.S. (2004) (stating: "Any person who performs ... any act of sexual intercourse ... in exchange for money or other thing of value commits prostitution").

Madden's conviction, however, was based on the second phrase, "prostitution *of* a child." (emphasis added). This phrase is statutorily defined as inducing a child to perform certain enumerated sex acts including intercourse with another through the use of coercion, threat, or intimidation or in exchange for money. § 18–7–401(7), C.R.S. (2004).[11] While this definition uses the term prostitution, the elements set forth in "prostitution of a child" contemplate more acts than expressly requiring the defendant to induce the victim to act as a prostitute or, in other words, paying the child to engage in sex. Thus, we must determine whether the General Assembly intended to remove the commercial aspect of prostitution when it enacted section 401(7).

If we read section 401(7) without incorporating the common meaning of the term prostitution, it appears that the plain meaning of the crime of patronizing a prostituted child could apply to an individual who forces the child to engage in a sexual act—similar to the crime of sexual assault.[12] On the other hand, if we read the statute to include the common understanding of prostitution and we incorporate that meaning into the definition of "prostitution of a child," then to be convicted of patronizing a prostituted child the defendant must be engaged in a commercial activity where he either gives or receives something of value in exchange for a child engaging in sex. In other words, a person who induces a child to engage in a sexual act, in exchange for money or its equivalent commits prostitution of a child.

Review of the statutory regimen reveals that the requirement that a commercial transaction occur is consistent with the sections surrounding this statute. The crime of patronizing a prostituted child and the definition of "prostitution of a child" are found in Part 4 of Article 7 of the Criminal Code titled "Child Prostitution." "Patronizing a prostituted child" is part of a grouping of child

---

**9.** This section has not changed since Madden's conviction. We will refer to the 2004 version.

**10.** Section 18–7–401(6) states:
"Prostitution by a child" means either a child performing or offering or agreeing to perform any act of sexual intercourse, fellatio, cunnilingus, masturbation, or anal intercourse with any person not the child's spouse in exchange for money or other thing of value or any person performing or offering or agreeing to perform any act of sexual intercourse, fellatio, cunnilingus, masturbation, or anal intercourse with any child not the person's spouse in exchange for money or other thing of value.
The language of this section was the same at the time of Madden's arrest and conviction.

**11.** Section 18–7–401(7) states:
"Prostitution of a child" means either inducing a child to perform or offer or agree to perform any act of sexual intercourse, fellatio, cunnilingus, masturbation, or anal intercourse with any person not the child's spouse by coercion or by any threat or intimidation or inducing a child, by coercion or by any threat or intimidation or in exchange for money or other thing of value, to allow any person not the child's spouse to perform or offer or agree to perform any act of sexual intercourse, fellatio, cunnilingus, masturbation, or anal intercourse with or upon such child.
The language of this section was identical at the time of Madden's arrest and conviction.

**12.** *See* § 18–3–405(2) (providing that a person commits sexual assault on a child punishable as a class 3 felony if he uses force or threats of injury to the victim or another to facilitate sexual contact).

prostitution offenses, all of which either expressly contemplate giving something of value in exchange for sex with a child or refer to the definitions of prostitution by a child or of a child. *See*, Soliciting for Child Prostitution, § 18–7–402, C.R.S (2004); Pandering of a Child, § 18–7–403, C.R.S (2004); Keeping a Place of Child Prostitution, § 18–7–404, C.R.S. (2004); Pimping of a Child, § 18–7–405, C.R.S (2004); and Inducement of Child Prostitution, § 18–7–404.5, C.R.S (2004).

Implicit in the title of the crime charged, "patronizing a prostituted child," is the concept that the General Assembly intended something of value to be exchanged. The common and ordinary meaning of "patronize" is "to be a regular customer of (a store, merchant, etc.)." *Webster's New World College Dictionary* 991 (3rd ed.1996). Absent statutory language indicating the contrary, the title of this crime implies that the General Assembly intended to punish individuals who give something of value in exchange for sex with a child. The plain and ordinary meanings for both of the terms "patronizing" and "prostitution" embrace some form of commercial transaction.

Because this statute can reasonably be construed in two different ways, one which does not require a commercial transaction and one that does, we turn to the legislative history for guidance.

The General Assembly created the crime of patronizing a prostituted child in 1979 when it enacted House Bill 1574. *See* ch. 174, sec. 1, § 18–7–401–08, 1979 Colo. Sess. Laws 740. This bill, sponsored by Representative Jack McCroskey and Senator Barbara Holme, replaced Part 4 of Article 7 of the Criminal Code with a new part titled "Child Prostitution." [13] In addition to patronizing a prostituted child, this new Part 4 contained a number of other crimes specifically criminalizing the acts of paying for or profiting from sexual acts with a person under the age of eighteen years. *Id.; see also* §§ 18–7–402–405.

Our review of the legislative history of House Bill 1574 indicates that by enacting the definition of "prostitution of a child," the General Assembly sought to prohibit acts by individuals, commonly referred to as pimps, who in exchange for money or something of value induce or force a child to perform sex acts. In a hearing on House Bill 1574 before the Senate Committee on Health, Environment, Welfare, and Institutions, the bill's sponsor, Senator Barbara Holme, stated that this law aimed "to increase the penalties for people who force or threaten or coerce children into being prostitutes." *Hearings on H.B. 1574 Before the Senate Health, Environment, Welfare, and Institutions Committee*, 52 General Assembly, First Regular Session (April 18, 1979) (remarks of Senator Holme).

The legislative history also establishes that the overall intent behind the crime of patronizing a prostituted child and the surrounding crimes contained in House Bill 1574 was to punish those people who either profit from or pay for sex with a child. This is evidenced by the introductory remarks to the Committee on Health, Environment, Welfare, and Institutions, by the sponsor of the bill, Representative Jack McCroskey. He stated that the purpose behind the bill was "to punish the people who are in the business, who make money off of child prostitution. That is, it's directed toward the panderers, the pimps, the patrons of child prostitution." *Hearings on H.B. 1574 before the House Health, Environment, Welfare, and Institutions Committee*, 52 General Assembly, First Regular Session (March 21, 1979) (remarks of Representative Jack McCroskey).

Relying upon the General Assembly's stated purpose in passing House Bill 1574, which was to criminalize commercialized sex with children, we construe the crime of patronizing a prostituted child to incorporate the common understanding of the term prostitution into the definition of "prostitution of a child." We hold that the crime of "patronizing a prostituted child" requires an exchange of something of value, a commercial transaction. Such a commercial transaction must occur between the patron—i.e., the person

---

13. This Part 4 was previously titled "Public Display of Obscene Materials" and provisions relating to those offenses were either repealed or relocated elsewhere in the Criminal Code effective July 1, 1977. *See* ch. 231, sec. 3, 1977 Colo. Sess. Laws 982.

having the sexual contact with the child—or between the patron and the one inducing the child to participate in the sexual act, the pimp. It is precisely this exchange of something of value between the patron and either the pimp or the child that distinguishes this crime from that of sexual assault.[14]

 Turning to the facts of this case, our review of the record indicates that there was no evidence presented at trial that Madden attempted to give anything of value to S.J. or to any other person in exchange for sex.[15] Therefore, we reverse Madden's conviction for attempted patronizing a prostituted child.

## IV. Conclusion

For the reasons stated above, we uphold Madden's conviction for attempted third degree sexual assault and reverse his conviction for attempted patronizing a prostituted child. Accordingly, we reverse the court of appeals' holdings on those issues and return the case for proceedings consistent with this opinion.

Justice BENDER dissents in part and concurs in part, and Justice MARTINEZ joins in the dissent and concurrence.

Justice COATS does not participate.

Justice BENDER dissenting in part and concurring in part.

Louis Madden's right to a fair trial was violated when he was charged with doing one criminal act but convicted of another. The prosecution charged Madden with attempted exposure of a child's intimate parts but the jury convicted him of an entirely different criminal act with different elements—that he attempted to subject a person to sexual contact. The majority finds no error despite this difference and concludes that Madden had adequate notice of the charges against him. In so doing, the majority fails to ana-

lyze the disparity between the crime charged and the crime for which he was convicted. Because I believe that the United States and Colorado Constitutions require the prosecution to prove the crime charged, and not some other crime proven at trial, I respectfully dissent to Part III(A) of the opinion and would reverse Madden's conviction for attempted third degree sexual assault.

### Discussion

The prosecution charged Louis Madden with attempted third degree sexual assault by exposing the intimate parts of another. The jury, however, was instructed that a person commits attempted third degree sexual assault if he "knowingly subjected a person to any sexual contact" by the use of force or violence.

The United States and Colorado Constitutions guarantee a defendant the fundamental right to be notified of the charges made against him. U.S. Const. amend. VI; Colo. Const. Art. II, Sec. 16; People v. Cooke, 186 Colo. 44, 46, 525 P.2d 426, 428 (1974). This right is so fundamental that the defendant may not be convicted of an offense that was not alleged in the charging document. Russell v. U.S., 369 U.S. 749, 770–71, 82 S.Ct. 1038, 1050–51, 8 L.Ed.2d 240 (1962); People v. Rodriguez, 914 P.2d 230, 257 (Colo.1996) (citing United States v. Mosley, 965 F.2d 906, 915 (10th Cir.1992)); 4 LaFave, Criminal Procedure § 19.6(b), at 809 (2nd ed.1999).

To provide adequate notice, an information must apprise the defendant of the charge he faces by setting forth the essential elements of the crime. Howe v. People, 178 Colo. 248, 253–55, 496 P.2d 1040, 1042–43 (1972). In general, the essential elements of a crime are "the elements of mental state, criminal conduct, and resulting harm" that the prosecution intends to prove at trial. 4 LaFave,

---

14. The General Assembly has provided several other avenues for convicting a defendant for unlawful sexual behavior with children. These include: sexual assault on a child, § 18–3–405, C.R.S. (2004); unlawful sexual contact with one who does not consent, § 18–3–404(1), C.R.S. (2004); or inducing a child to expose intimate parts or engage in sexual contact, § 18–3–404(1.5).

15. When reviewing a conviction based on claims of insufficient evidence to convict on the crime charged, we must determine whether the evidence that was presented when viewed in the light most favorable to the prosecution could support a finding of guilt beyond a reasonable doubt. Kogan v. People, 756 P.2d 945, 950 (Colo. 1988).

*Criminal Procedure,* § 19.3(a), at 762 (2nd ed.1999).

The constitutional rights of a defendant are impacted when an essential element of the charging document is altered after trial has begun. *Rodriguez,* 914 P.2d at 257. Thus, if a defendant's conviction is based on an entirely different act than what is present in the charging document—that is, the original charge is broadened—the indictment has been constructively amended. *U.S. v. Miller,* 471 U.S. 130, 139, 105 S.Ct. 1811, 1816, 85 L.Ed.2d 99 (1985).

"To prevail on a constructive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *U.S. v. Milstein,* 401 F.3d 53, 65 (2nd Cir.2005) (quoting *United States v. Salmonese,* 352 F.3d 608, 620 (2nd Cir.2003)). When a reviewing court determines that the charging document has been constructively amended, a defendant's conviction must be reversed. *See Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *Milstein,* 401 F.3d at 65; *Hunter v. New Mexico,* 916 F.2d 595, 599 (10th Cir.1990); *Casadas v. People,* 134 Colo. 244, 304 P.2d 626 (1956).

Turning to this case, I conclude that the jury convicted Madden of an entirely different method of committing attempted third degree sexual assault than was identified in the charging document—contact or touching compared to exposure. While the generic crime charged remained the same, attempted third degree sexual assault [1], the method of committing the crime was inherently different. One requires removal of the victim's clothing so that the defendant may see or be exposed to the victim's intimate parts. This may be accomplished without touching the victim's intimate parts or for that matter, without touching the victim. The other method, however, applies whether or not the victim's clothing is removed and requires a touching or contact between the defendant and the victim's intimate parts, or as relevant to the facts presented at Madden's trial, requires contact between the defendant's intimate parts and the victim. [2]

This difference between how the prosecution claims the offense was committed goes directly to the criminal conduct at issue, an essential element of the crime. Thus, by changing an essential element of the crime charged after Madden became powerless to rebut it, Madden was denied his constitutional right to know the charges against him and defend against those charges.

The majority relies upon the fact that the information included the phrase "with or without sexual contact" to conclude that Madden was on notice that evidence could be presented indicating that some form of sexual contact occurred. *Maj. op.* at 456–57. While this recitation of what is contained within the information is true, this fact alone does not change that Madden was charged with exposing S.J.'s intimate parts. Had he disproved this element of the crime, that he did not expose her intimate parts irrespective of whether there was sexual contact, then Madden would have been acquitted of third degree sexual assault as charged in the information. The prosecution has the constitutional responsibility to provide the defendant with notice of the criminal act charged and then prove that charge, and not some other criminal act. Basic constitutional criminal jurisprudence does not permit the prosecution to mold the crime to fit the evidence presented at trial.

I also take issue with the majority's position that reference to the statutory subsec-

---

1. Third degree sexual assault is defined as inducing someone "to expose intimate parts *or* to engage in any sexual contact, intrusion or penetration" for the defendant's sexual gratification. § 18–3–404(1.5), C.R.S. (1999) (emphasis added).

2. Section 18–3–401(4), C.R.S. (1999), defines "sexual contact" as:

[T]he knowing touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or the knowing touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact is for the purposes of sexual arousal, gratification, or abuse.

tion in the information is sufficient to cure the problem created by the variance between the information and the jury instruction. This is not a case where the defendant challenges the sufficiency of the information in setting forth the crime charged. *See People v. Williams,* 984 P.2d 56 (Colo.1999); *Cervantes v. People,* 715 P.2d 783 (Colo.1986). Nor is this a situation where the prosecution charged a defendant with alternative methods of committing a crime, *Rodriguez,* 914 P.2d at 258, or where the defendant is convicted of a lesser included offense of the charge alleged in the information, *People v. Cooke,* 186 Colo. 44, 47, 525 P.2d 426, 428 (1974). Rather, in this case the essential elements of the crime charged are inherently *different* from the crime instructed. Whether a defendant is charged with attempt does not change the constitutional requirement that an accused be convicted of the criminal act charged and not some other act. Here, Madden was charged with one crime, the attempted exposure of a child's intimate parts, but convicted of another, attempted sexual contact.

The method or manner of committing the crime charged—the criminal conduct—is an "essential element" that must be disclosed to the defendant prior to trial. Where the essential elements of committing the offense as alleged in the charging document are different from those elements that are set forth in the jury instructions, the defendant's right to a fair and adequate opportunity to prepare his defense is violated.

Therefore, I would hold that this substantial change to the crime charged embodied in the jury instruction constituted a constructive amendment when the jury convicted Madden of a criminal act for which he was not charged. This constructive amendment should be fatal to Madden's conviction. Hence, I respectfully dissent to part III(A) of the majority's opinion.

I am authorized to state that Justice MARTINEZ joins in this dissent.