**Wendy BROWNSON–RAUSIN, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE of Colorado, Valley View Hospital, and Colorado Hospital Association Trust, Respondents.**

No. 04CA2279.

Colorado Court of Appeals, Div. IV.

Oct. 20, 2005.

Rehearing Denied Jan. 5, 2006.

Certiorari Denied April 3, 2006.*

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2005.

* Justice EID does not participate.

1174

Timothy Quinn, Denver, Colorado, for Petitioner.

John W. Suthers, Attorney General, Laurie Rottersman, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Dworkin, Chambers & Williams, P.C., David Dworkin, Bernadette Wasilik, Denver, Colorado, for Respondents Valley View Hospital and Colorado Hospital Association Trust.

HUME **, J.

In this workers' compensation case brought against Valley View Hospital and its insurer, Colorado Hospital Association Trust (collectively employer), Wendy Brownson–Rausin (claimant) seeks review of a final order of the Industrial Claim Appeals Office (Panel) determining that she was at maximum medical improvement (MMI) on April 5, 1995, and denying her claim for temporary total disability (TTD) benefits after that date. We affirm.

Claimant sustained a compensable back injury in 1991. An authorized treating physician (ATP) found that claimant was at MMI in December 1994, but retracted that opinion in January 1995. The law at the time required, without exception, an ATP's finding of MMI prior to a request for a division-sponsored independent medical examination (DIME). Colo. Sess. Laws 1991, ch. 219, § 8–42–107(8)(b) at 1309; *Aren Design, Inc. v. Becerra*, 897 P.2d 902 (Colo.App.1995). Relying on the ATP's 1994 MMI determination, employer requested a DIME on the MMI issue.

The DIME physician determined that claimant reached MMI in April 1995. In a 1996 order, the administrative law judge (ALJ) found that claimant failed to overcome the DIME. However, the Panel remanded for

the ALJ to resolve the conflicts between the ATP's two MMI opinions.

In the 1999 order on remand, the ALJ resolved the conflict by finding that the ATP had not placed claimant at MMI. Because the DIME requirements in former § 8–42–107(8)(b) had not been met, the ALJ determined that the "DIME" was not actually a DIME and was therefore "irrelevant." Claimant's TTD benefits were reinstated from October 1994 "and continuing until terminated pursuant to law."

Both the Panel and a division of this court affirmed. *Valley View Hosp. v. Indus. Claim Appeals Office*, (Colo.App. No. 99CA2190, May 25, 2000)(not published pursuant to C.A.R. 35(f) ). In accordance with the division's opinion, employer filed a general admission of liability (GAL) in 2001 admitting for TTD benefits from 1994 and continuing.

During this litigation, the DIME statute was amended to allow the employer or insurer to request a DIME even though an ATP had not determined that the claimant reached MMI. The amended statute allowed a DIME without MMI if at least eighteen months had passed since the date of injury; the ATP had been requested to, but did not, find the claimant at MMI; and a physician other than the ATP had found MMI. Colo. Sess. Laws 1996, ch. 112, § 8–42–107(8)(b)(II) at 457 (now codified at § 8–42–107(8)(b)(II), C.R.S.2005, with subsequent amendments not pertinent here).

In accordance with the amended statute, employer gathered the evidence necessary to obtain a DIME without an ATP's finding of MMI. The Division of Workers' Compensation appointed the same physician who had performed the earlier "DIME" to perform a "follow-up" DIME. In 2002, the DIME physician examined claimant and issued a report reiterating his prior opinion that claimant reached MMI in April 1995, and issued a forty-four percent whole person impairment rating. Employer filed a final admission of liability (FAL) in 2002 terminating TTD benefits as of the 1995 MMI date, and claiming

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2005.

an offset against permanent partial disability (PPD) benefits for all TTD benefits paid after that date.

Claimant objected to the FAL and requested a hearing, arguing that the FAL should be struck because it violated principles of collateral estoppel. She asserted that the 2002 FAL sought to redetermine issues of MMI and TTD, which had been conclusively determined by the appellate court in 2000. She also argued that because the ALJ found that the physician appointed to perform the DIME in 1995 had not performed a valid DIME, he could not perform a "follow-up" DIME in 2002. Finally, claimant argued that the evidence does not support a finding that she was at MMI.

After the Panel remanded for a final order, a second ALJ determined that the 2002 FAL was not an attempt to redetermine MMI and TTD, and therefore collateral estoppel did not apply. Accordingly, claimant's request to strike the FAL was denied. The ALJ also held that even though the first ALJ held that the DIME physician's first opinion was "irrelevant," he could properly perform a "follow-up" DIME. The second ALJ was not persuaded that claimant overcame the DIME physician's finding that MMI occurred in 1995. The Panel affirmed.

### I.

Claimant raises several issues relating to the provisions in § 8–42–107(8)(b)(II) allowing a DIME without an ATP's finding of MMI.

### A.

▪ Claimant contends that the 2000 appellate opinion conclusively established that she was not at MMI in April 1995 and was entitled to continuing TTD benefits from that date forward. Thus, she reasons that the second ALJ violated principles of collateral estoppel by determining that she reached MMI in April 1995, as determined by the DIME physician. We disagree.

▪ Collateral estoppel, or issue preclusion, is an equitable doctrine that operates to bar relitigation of an issue that has been finally decided by a court or administrative agency in a prior action. Issue preclusion bars relitigation of an issue if (1) the issue sought to be precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44 (Colo.2001).

▪ An issue is necessarily adjudicated if it is essential to the judgment entered. This requirement is justified by the recognition that a previous tribunal may not have taken the care needed adequately to determine an issue that would not affect the disposition of the case. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78 (Colo.1999).

In the 1999 order, the first ALJ found that when employer requested the DIME in 1995, the existing legal procedure in former § 8–42–107(8)(b) did not authorize a DIME on the issue of MMI unless the ATP had placed claimant at MMI. The ALJ found that this prerequisite was not present at the time of the DIME request, and therefore, the 1995 DIME was invalid. Because employer had not shown that claimant reached MMI or that any other grounds existed for terminating TTD benefits, employer was found liable for TTD benefits from 1994 "and continuing until terminated pursuant to law."

The appellate division agreed that the record supported the first ALJ's finding that the treating physician had not placed claimant at MMI. Therefore, it concluded that "employer was not entitled to preempt the treating physician's opinion by requesting an IME." *Valley View Hosp. v. Indus. Claim Appeals Office, supra.*

Neither the first ALJ nor the division determined, as a matter of fact, whether claimant had reached MMI. Rather, they determined that the legal prerequisite for making that determination, a finding of MMI by the ATP, had not yet occurred. Indeed, by stating that TTD benefits would continue "until terminated pursuant to law," the first ALJ

recognized that MMI could still be determined in later proceedings.

Thus, collateral estoppel did not preclude the second ALJ from determining the date of MMI. In the 2004 order, the second ALJ found that the prerequisites for determining MMI existed because employer complied with the new procedure for obtaining a DIME in cases where the ATP has not determined the claimant to be at MMI. *See* § 8–42–107(8)(b)(II). Thus, the second ALJ proceeded to the substantive issue of whether the DIME physician's finding of MMI had been overcome. That question was not previously decided, nor was it necessarily adjudicated by the first ALJ's 1999 order or the 2000 appellate opinion. *See Sunny Acres Villa, Inc. v. Cooper, supra.*

### B.

■ We also reject claimant's assertion that the procedures for a DIME without MMI in § 8–42–107(8)(b)(II) did not govern the second ALJ's determination of MMI.

The procedures mandated by § 8–42–107(8)(b)(II) apply to "determinations" of MMI on or after July 1, 1996. Colo. Sess. Laws 1996, ch. 112 at 457.

■ While claimant argues that the term "determinations" refers to "legal determinations," we agree with the Panel that it means "medical determinations." *See Dillard v. Indus. Claim Appeals Office,* 131 P.3d 301, 2005 WL 1303265 (Colo.App. No. 04CA0680, June 2, 2005)(courts traditionally give deference to statutory interpretation adopted by the officer or agency charged with its administration). Even if the term is susceptible of differing interpretations, we are convinced that the context in which the term "determinations" is used leaves no doubt that it refers to "medical determinations." *See People v. Madden,* 111 P.3d 452 (Colo.2005)(where intended scope of a statute is ambiguous, court may examine statute's textual context to determine General Assembly's intent); *Midboe v. Indus. Claim Appeals Office,* 88 P.3d 643 (Colo.App.2003)(if a statute is fairly susceptible of more than one interpretation, it is ambiguous, and court may look to statutory context).

Unlike the pre–1991 versions of the statute, the current statute provides that the determination of MMI is now primarily a medical determination. *Monfort Transp. v. Indus. Claim Appeals Office,* 942 P.2d 1358 (Colo.App.1997). This conclusion is based both on the language of § 8–42–107(8)(b), which requires the ATP to make a determination in the first instance as to when the injured employee reaches MMI, and the recognition that the General Assembly sought to decrease litigation by providing a medical procedure to resolve the issue. *See Colo. AFL–CIO v. Donlon,* 914 P.2d 396 (Colo.App. 1995).

Furthermore, the plain language of amended § 8–42–107(8)(b), C.R.S.2005, repeatedly uses forms of the term "determine" to refer to the determination by the ATP. This wording lends further support for the conclusion that the phrase "determination of MMI," as used in the provision for the effective date of the amended statute, refers to "medical determinations." *See Dillard v. Indus. Claim Appeals Office, supra* (court must construe the statutory scheme in a manner that gives consistent, harmonious, and sensible effect to all its parts).

Hence, the statute applies in cases where the required medical determinations of MMI occur after July 1, 1996. As found by the second ALJ, all the required medical determinations, including the report of employer's IME, the ATP's failure to place the claimant at MMI, and the DIME physician's 2002 report, occurred after July 1, 1996. The fact that the DIME physician also issued an opinion in 1995 does not change the fact that all required "determinations" were obtained after July 1, 1996.

### C.

■ Claimant contends next that the amended version of § 8–42–107(8)(b)(II), as interpreted, constitutes retrospective legislation. Again, we disagree.

■ A law is illegally retrospective if it takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, or attaches a new disability to transactions or consider-

ations already past. Colo. Const. art. II, § 11; *Nye v. Indus. Claim Appeals Office,* 883 P.2d 607 (Colo.App.1994).

■ The substantive rights and liabilities of the parties to a workers' compensation case are determined by the statute in effect at the time of a claimant's injury, while procedural changes in the statute become effective during the pendency of a claim. *Colo. Comp. Ins. Auth. v. Jones,* 131 P.3d 1074, 2005 WL 1189843 (Colo.App. No. 03CA0487, 03CA1740, May 19, 2005). For purposes of retrospectivity analysis, substantive statutes relate to the creation, elimination, or modification of vested rights or liabilities, while procedural statutes relate only to remedies or modes of procedure to enforce such rights or liabilities. *Am. Comp. Ins. Co. v. McBride,* 107 P.3d 973 (Colo.App.2004).

Section 8–42–107(8)(b)(II) establishes procedures for the determination of MMI and the allocation of the burden of proof. Its enactment did not deprive or impair any vested right belonging to claimant. Thus, because the statute effects a change that is procedural, it may be applied retroactively. *See Am. Comp. Ins. Co. v. McBride, supra.*

## II.

■ Claimant further contends that the second ALJ erred in determining that the DIME was valid. Claimant argues that the first ALJ found that the first "DIME" was not a valid DIME, and therefore the same physician could not be chosen to perform a "follow-up" DIME. Claimant also asserts that the DIME physician was biased because of the first examination he conducted in 1995. We are not persuaded.

The finding of the first ALJ was that selection of a DIME physician was premature because no ATP had placed claimant at MMI. However, the first ALJ did not preclude a follow-up DIME by the same physician after it was determined that the time for selection of a DIME physician was ripe. Claimant cites no authority, and we are aware of none, that would prevent the Division from appointing the same physician to conduct the 2002 DIME.

■ Nor did the performance of the 1995 examination establish that the physician was biased so as to preclude him from performing the 2002 DIME.

■ The type of bias that must be avoided is the type of predisposition which arises from a physician's role in treating the claimant. *See* Dep't of Labor & Employment Rule XIV(L)(2)(h), 7 Code Colo. Regs. 1101–3. A treating physician may well be biased in favor of the selecting party. *See Whiteside v. Smith,* 67 P.3d 1240 (Colo. 2003)(DIME system was created in part to address the potential for treating physicians to be biased in favor of employer and insurer). Conversely, the Division's selection of a physician to perform a DIME is indicative of a determination that the physician is not biased and can evaluate the case independently. *See Colo. AFL–CIO v. Donlon, supra.*

Here, there is no showing that the DIME physician ever treated claimant or participated in her treatment. Nor is there any other evidence indicating that the DIME physician was biased in favor of either party. The mere fact that he attempted a DIME in 1995 does not establish any bias which would disqualify him from performing the DIME in 2002. Indeed, the rules governing workers' compensation cases contemplate that the same physician may perform more than one DIME "as appropriate" to complete the case. *See* Dep't of Labor & Employment Rule XIV(L)(7).

## III.

■ Claimant also contends that by filing a FAL in 2002, which terminated her TTD benefits effective April 1995, employer impermissibly withdrew the 2001 GAL, which had reinstated TTD benefits effective April 1995. She argues that a GAL can be withdrawn only in certain circumstances which are not present here. We perceive no error.

Claimant's assertion notwithstanding, employer's 2002 FAL did not constitute an attempt to "withdraw" the GAL. *See Johnson v. Indus. Comm'n,* 761 P.2d 1140 (Colo.1988)(rejecting argument that retroactive application of the offset was equivalent

to retroactive withdrawal or revocation of an insurer's admission of liability); *cf. HLJ Mgmt. Group, Inc. v. Kim,* 804 P.2d 250 (Colo.App.1990)(discussing requirements for withdrawal of admissions). The GAL was filed to implement the holding in the appellate opinion that determination of MMI was premature because no ATP had placed claimant at MMI. In contrast, the 2002 FAL was filed after the DIME physician properly determined that claimant reached MMI in April 1995.

 Furthermore, it was not improper for employer to claim an offset of overpaid TTD benefits against the award of PPD benefits. *See* Dep't of Labor & Employment Rule IV(G)(2) (insurer shall receive credit against permanent disability benefits for any temporary disability benefits paid beyond the date of MMI); *Am. Comp. Ins. Co. v. McBride, supra.* Such offsets do not abrogate admissions or discontinue benefits, but instead adjust the amount of benefits accurately to reflect the correct amount of benefits to which a claimant is entitled. *Johnson v. Indus. Comm'n, supra; Jiminez v. Indus. Claim Appeals Office,* 51 P.3d 1090 (Colo.App.2002)(retroactive assertion of an offset is not tantamount to an improper retroactive correction of a mistaken admission).

## IV.

 Claimant's final contention is that the second ALJ erred in finding that she failed to overcome by clear and convincing evidence the DIME physician's finding that she reached MMI in 1995. She asserts that she cannot be at MMI until certain diagnostic procedures are complete, particularly those recommended by her ATP relating to Complex Regional Pain Syndrome (CRPS). She argues that employer obstructed her obtaining these diagnostic procedures until 2004, when employer's IME physician requested some of them. We perceive no error.

 Pursuant to § 8–42–107(8)(b)(III), C.R.S.2005, a DIME physician's finding of MMI is binding on the parties unless overcome by clear and convincing evidence. Because an MMI determination requires the DIME physician to ascertain the cause of the claimant's medical conditions, the DIME physician's determination of causation must also be overcome by clear and convincing evidence. *Cordova v. Indus. Claim Appeals Office,* 55 P.3d 186 (Colo.App.2002).

MMI exists when "any medically determinable physical or mental impairment as a result of injury has become stable and when no further treatment is reasonably expected to improve the condition." Section 8–40–201(11.5), C.R.S.2005; *see Whiteside v. Smith, supra.* Moreover, "[t]he requirement for future medical maintenance which will not significantly improve the condition or the possibility of improvement or deterioration resulting from the passage of time shall not affect a finding of [MMI]." Section 8–40–201(11.5).

The ALJ made exhaustive findings of fact and found that the DIME physician's opinion that claimant reached MMI is supported by other medical opinions. In accordance with the DIME physician's opinion, the ALJ also found that claimant does not have CRPS as suggested by the ATP. Furthermore, the ALJ awarded ongoing medical benefits after MMI, which included a number of independent medical evaluations and diagnostic testing that had been recommended. As the ALJ noted, a number of these procedures had already been performed by the date of the hearing and were no longer necessary to maintain claimant's condition.

The ALJ's findings are supported by substantial, albeit conflicting, evidence in the record. *See* § 8–43–308, C.R.S.2005 (reviewing court must uphold the ALJ's determination if supported by substantial evidence in the record); *Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office,* 5 P.3d 385 (Colo.App. 2000)(the ALJ determines as a question of fact whether the DIME physician's finding of MMI has been overcome by clear and convincing evidence). Consequently, we perceive no basis for setting aside the order.

The order of the Panel is affirmed.

Judge CARPARELLI and Judge CRISWELL ** concur.