OK20CA2063 Sullivan v ICAO 10-21-2021 COLORADO COURT OF APPEALS Court of Appeals No. 20CA2063 Industrial Claim Appeals Office of the State of Colorado WC No. 5-072-843 James Sullivan, Petitioner, v. Industrial Claim Appeals Office of the State of Colorado, CPC Logistics, and ACE American Insurance, Respondents. ORDER AFFIRMED Division IV Opinion by JUDGE FREYRE J. Jones and Tow, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 21, 2021 Mark A. Simon, Denver, Colorado, for Petitioner No Appearance for Respondent Industrial Claim Appeals Office Pollart Miller LLC, Brad J. Miller, Greenwood Village, Colorado, for Respondents CPC Logistics and ACE American Insurance 
1 ¶ 1 In this workers’ compensation action, claimant, James Sullivan, seeks review of a final order of the Industrial Claim Appeals Office (Panel), which affirmed the decision of an administrative law judge (ALJ). The ALJ denied Sullivan’s requests (1) for temporary total disability (TTD) benefits from October 4, 2019, through October 23, 2019; and (2) to impose penalties against employer, CPC Logistics (CPC), and insurer, ACE American Insurance (collectively respondents), for their failure to pay those benefits. We affirm the Panel’s order. I. Background ¶ 2 Sullivan worked as a truck driver for CPC. On March 18, 2018, Sullivan was putting fuel into his work truck when he slipped and fell backward onto a concrete barrier (the work accident). Later that day, Sullivan drove himself to the emergency room where he was diagnosed with three fractured ribs on his left side. ¶ 3 The following day, Sullivan went to see Dr. Charles Wenzel. Sullivan reported left-sided rib pain, right-sided trapezial pain, and left leg pain. Dr. Wenzel referred Sullivan to Dr. Gretchen Brunworth for pain management. 
2 ¶ 4 On March 20, 2018, Sullivan went to see Dr. Brunworth. Sullivan reported stiffness and discomfort in his right neck and shoulder region, tingling and discomfort down his right arm into his forearm, and left-sided rib pain. ¶ 5 Sullivan continued to see Dr. Brunworth through May 2018. As time went on, Sullivan reported lower back pain and pain in his left leg. On May 29, 2018, Sullivan reported that his rib pain had dissipated. So Dr. Brunworth discharged him from treatment, stating, “If Dr. Wenzel deems that the low back condition is related to his injury and he needs some assistance with evaluating and treating that condition, I am happy to see him back.” ¶ 6 On July 30, 2018, Dr. Wenzel transferred Sullivan’s pain management care to Dr. Roberta Anderson-Oeser. When Sullivan first saw Dr. Anderson-Oeser in July 2018, he reported that he had “immediate cervical and low back pain and left leg pain and paresthesias” at the time of the injury. ¶ 7 About a month later, Sullivan told Dr. Anderson-Oeser that he wanted to return to full-duty work without restrictions because he was bored being at home. Based on his request, Dr. Anderson-
Oeser released Sullivan to full-duty work. 
3 ¶ 8 Respondents had been paying Sullivan TTD benefits. After Sullivan returned to full-duty work, respondents filed a General Admission of Liability (GAL), terminating those benefits. The GAL admitted medical benefits and TTD benefits from March 19, 2018, through April 15, 2018, and June 11, 2018, through August 27, 2018. ¶ 9 On September 19, 2018, Sullivan underwent a respondents’ independent medical examination (IME) with Dr. Allison Fall. Dr. Fall opined that  the work accident resulted in three left-sided rib fractures and a temporary aggravation of Sullivan’s cervical myofascial pain, both of which had dissipated;  Sullivan had pre-existing chronic lower back and leg pain for which he had taken opioid medication; and  Sullivan reached maximum medical improvement (MMI) on May 29, 2018, with no permanent impairment or work restrictions related to the work accident after that time. ¶ 10 On February 13, 2019, Dr. Brunworth conducted a medical records review and agreed with Dr. Fall’s conclusions. She opined that there was no evidence that Sullivan sustained a lower back 
4 injury from the work accident and agreed that Sullivan reached MMI on May 29, 2018, with no permanent impairment or work restrictions. ¶ 11 Based on Dr. Brunworth’s report, respondents filed a Final Admission of Liability (FAL). Respondents stated that Sullivan (1) reached MMI on May 29, 2018; (2) had no permanent impairment; and (3) was not entitled to maintenance care after he reached MMI. ¶ 12 Sullivan challenged the validity of the FAL. After an evidentiary hearing, ALJ Edwin Felter concluded that the FAL was invalid because Dr. Brunworth was not an authorized treating physician (ATP) when she determined that Sullivan was at MMI. ¶ 13 In the meantime, Sullivan continued to be treated by Dr. Anderson-Oeser to alleviate the pain in his lower back and lower left extremity. On October 3, 2019, Sullivan told Dr. Anderson-Oeser that his pain, numbness, tingling, and weakness were increasing with sitting and driving. Along with her treatment recommendations, Dr. Anderson-Oeser gave Sullivan work restrictions that included “no commercial driving or loading/unloading trucks.” Those work restrictions continued until 
5 October 23, 2019, when Dr. Anderson-Oeser placed Sullivan on modified work duty. ¶ 14 Respondents refused to pay Sullivan TTD benefits from October 4, 2019, through October 23, 2019. So Sullivan filed an application for hearing, requesting (1) TTD benefits for that time period; and (2) penalties based on respondents’ failure to pay them. ¶ 15 After an evidentiary hearing, ALJ Peter Cannici concluded that Sullivan and failed to demonstrate by a preponderance of the evidence that he was entitled to TTD benefits from October 4, 2019, through October 23, 2019. In reaching that conclusion, ALJ Cannici made the following findings of fact:  Sullivan had a pre-existing lumbar spine condition that required continuing treatment, as evidenced by a 2015 MRI. Medical records from October 2017 showed that Sullivan reported lower back pain and had obtained medication to treat his symptoms.  The medical records and reports of Dr. Fall and Dr. Brunworth showed that Sullivan’s work injury was limited to three rib fractures and a temporary aggravation of his cervical myofascial pain that had dissipated. 
6 Sullivan did not suffer any injury to his lower back based on the work accident.  The opinions of Dr. Fall and Dr. Brunworth were persuasive.  The work restrictions from October 4, 2019, through October 23, 2019, were based on Sullivan’s pre-existing, non-work-related lower back condition and were not caused by the work accident. At that time, his rib fractures and the temporary aggravation of his cervical myofascial pain had dissipated. ¶ 16 ALJ Cannici also concluded that respondents’ decision to dispute TTD benefits after Sullivan had been working without restrictions for thirteen months was not a basis for penalties. He found that respondents properly terminated TTD benefits when Sullivan returned to work in August 2018 and had no legal duty to admit to TTD benefits until Sullivan established the existence of a disability, which he had failed to do. ¶ 17 Sullivan filed a petition for review of ALJ Cannici’s order, arguing that (1) he was not given notice and an opportunity to be heard on the issue of whether his lower back condition was 
7 compensable; (2) respondents previously admitted that his back injury was compensable; and (3) the doctrines of res judicata, collateral estoppel, and the law of the case precluded ALJ Cannici from determining the issue of whether his back condition was compensable because ALJ Felter’s prior order had already determined that issue. ¶ 18 On review, the Panel affirmed ALJ Cannici’s order, making the following conclusions:  There was no basis to disturb ALJ Cannici’s determination that Sullivan’s work restrictions from October 4, 2019, through October 23, 2019, were unrelated to the work accident because it was supported by the opinions of Dr. Fall and Dr. Brunworth and other medical evidence in the record.  The issue was not compensability but the nature and extent of the injury since respondents had admitted that Sullivan suffered a work-related injury.  It was proper for ALJ Cannici to consider the issue of causation because Sullivan requested a hearing on the issue of TTD benefits, which required Sullivan to prove 
8 that the work accident caused a disability and that the disability caused him to leave work.  By requesting a hearing on the issue of TTD benefits, Sullivan had notice that the issue of causation would be considered by ALJ Cannici.  ALJ Cannici was not precluded from considering causation by ALJ Felter’s order because that order only addressed whether Dr. Brunworth was an ATP for purposes of making the MMI determination, whereas ALJ Cannici was only asked to determine Sullivan’s entitlement to TTD benefits and whether respondents should pay penalties for their failure to pay those benefits.  The law of the case doctrine did not preclude ALJ Cannici from determining the issue because that doctrine only applied to decisions of law and not the resolution of factual issues. II. Analysis ¶ 19 Sullivan contends that we should set aside the Panel’s order because (1) he was denied due process; (2) respondents previously 
9 admitted that his back injury was compensable; and (3) ALJ Felter had previously decided that his back injury was compensable. ¶ 20 We see no reason to set aside the Panel’s order. A. Standard of Review ¶ 21 As relevant here, we may only set aside the Panel’s order if the “denial of benefits is not supported by applicable law.” § 8-43-308, C.R.S. 2020. We review de novo the ALJ’s and the Panel’s legal conclusions. See Colo. Dep’t of Lab. & Emp. v. Esser, 30 P.3d 189, 193 (Colo. 2001). B. Due Process ¶ 22 We first reject Sullivan’s contention that he was denied due process because he was not given notice and an opportunity to be heard on the issue of compensability of his back injury. ¶ 23 Procedural due process requires that a party be given notice and an opportunity to be heard. See Hendricks v. Indus. Claim Appeals Off., 809 P.2d 1076, 1077 (Colo. App. 1990). When the administrative adjudication “turns on questions of fact, due process requires that the parties be apprised of all the evidence to be submitted and considered, and that they be afforded a reasonable 
10 opportunity in which to confront adverse witnesses and to present evidence and argument in support of their position.” Id. ¶ 24 Sullivan filed an application for a hearing seeking an order that would require respondents to pay him TTD benefits from October 4, 2019, through October 23, 2019. ¶ 25 A claimant has “the burden of proving entitlement to benefits by a preponderance of the evidence.” § 8-43-201(1), C.R.S. 2020. To be entitled to an award of TTD benefits, a claimant must show that (1) the work injury caused a disability; (2) he left work as a result of the injury; and (3) “the temporary disability is total” and lasted “more than three regular working days.” Lymburn v. Symbios Logic, 952 P.2d 831, 833 (Colo. App. 1997); see also § 8-42-
103(1)(a), C.R.S. 2020. ¶ 26 Because a claimant must establish a causal connection between a work-related injury and a subsequent wage loss to obtain TTD benefits, Sullivan necessarily raised the issue of whether his back injury was caused by the work accident by requesting TTD benefits. Therefore, Sullivan had notice that the relatedness of his back injury to the work restrictions would be determined at the hearing. Cf. Hendricks, 809 P.2d at 1077-78 (concluding that the 
11 claimant was denied procedural due process when the ALJ terminated her TTD benefits after finding that she had reached MMI because the parties had stipulated that the issue of MMI was premature and the only issues for the hearing were the claimant’s past due disability benefits and the proper computation of her average weekly wage). ¶ 27 Sullivan also knew about the opinions of Dr. Fall and Dr. Brunworth. Indeed, he included those reports in the exhibits that he tendered in advance of the hearing. Respondents also included those reports in their hearing exhibits. ¶ 28 Under these circumstances, we conclude that the Panel properly determined that Sullivan had notice that the causation of his back injury would be an issue at the hearing. C. Prior Admission ¶ 29 Next, Sullivan contends that respondents previously admitted that his back injury was related to the work accident because they filed a GAL, knew his ATP was treating him for a back injury, and did not endorse the compensability of his back injury as an issue for the hearing. 
12 ¶ 30 Although respondents filed a GAL, the filing of a GAL does not foreclose an employer’s right to dispute the extent of a claimant’s injury. See Leprino Foods Co. v. Indus. Claim Appeals Off., 134 P.3d 475, 483 (Colo. App. 2005). When a dispute arises after a GAL has been filed, an employer may generally assert that “the claimant did not establish the threshold requirement of a direct causal relationship” between the work injury and the claimed benefits. Snyder v. Indus. Claim Appeals Off., 942 P.2d 1337, 1339 (Colo. App. 1997). Thus, respondents had a right to dispute the extent of Sullivan’s injury — that is, whether Sullivan’s work restrictions from October 4, 2019, through October 23, 2019, were based on an injury that Sullivan sustained during the work accident. ¶ 31 We also reject Sullivan’s argument that respondents admitted that his back injury was related to the work accident because they knew his ATP was treating him for a back injury and they did not endorse the issue for the hearing. To be sure, respondents not only knew that Sullivan was being treated for a back injury, they had contested liability for that treatment by having Sullivan undergo an IME and by filing a FAL in which they stated that Sullivan had reached MMI once he had no more symptoms related to the rib 
13 fractures he had sustained. Although ALJ Felter concluded that the FAL was invalid, Sullivan should have known that respondents would contest liability when he requested TTD benefits based on his back injury. ¶ 32 We therefore conclude that these contentions do not require us to set aside the Panel’s order. D. Issue Preclusion, Claim Preclusion, and Law of the Case ¶ 33 Finally, Sullivan argues that ALJ Cannici was precluded from determining that his back injury was unrelated to the work accident by the doctrines of issue preclusion, claim preclusion, and the law of the case because (1) that issue had already been decided by ALJ Felter, who found that he was not at MMI for his back injury; and (2) ALJ Felter rejected the records opining that the back injury was unrelated to the work accident. We disagree. 1. Issue Preclusion ¶ 34 We review de novo whether the doctrine of issue preclusion applies. See Morris v. Indus. Claim Appeals Off., 2020 COA 129, ¶ 14. ¶ 35 Issue preclusion is “an equitable doctrine that operates to bar relitigation of an issue that has been finally decided by a court or 
14 administrative agency in a prior action.” Brownson-Rausin v. Indus. Claim Appeals Off., 131 P.3d 1172, 1176 (Colo. App. 2005). The doctrine of issue preclusion applies to a workers’ compensation claim. See Morris, ¶ 12. The party seeking to invoke the doctrine has the burden of establishing its elements. See id. at ¶ 13. ¶ 36 Issue preclusion applies if (1) “the issue sought to be precluded is identical to an issue actually determined in the prior proceeding”; (2) “the party against whom estoppel is asserted” was a party in the prior proceeding; (3) “there is a final judgment on the merits in the prior proceeding”; and (4) “the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.” Brownson-Rausin, 131 P.3d at 1176. ¶ 37 “An issue is necessarily adjudicated if it is essential to the judgment entered.” Id. This requirement recognizes that “a previous tribunal may not have taken the care needed adequately to determine an issue that would not affect the disposition of the case.” Id. ¶ 38 The issue before ALJ Felter for determination was not the same issue that was decided by ALJ Cannici. ALJ Felter considered whether Dr. Brunworth was an ATP at the time she determined that 
15 Sullivan had reached MMI. Based on his conclusion that Dr. Brunworth was not an ATP at that time, ALJ Felter concluded that the FAL was invalid. In contrast, the issue before ALJ Cannici was whether Sullivan was entitled to TTD benefits after he was given work restrictions in October 2019. Importantly, the issues of whether Sullivan injured his lower back due to the work accident, reached MMI, and was entitled to receive workers’ compensation benefits for his lower back injury were not before ALJ Felter for adjudication. ¶ 39 Because the issue before ALJ Felter (the validity of the FAL) was different from the issue before ALJ Cannici (whether Sullivan was entitled to TTD benefits), we conclude that the doctrine of issue preclusion does not apply. 2. Claim Preclusion ¶ 40 Although the doctrine of claim preclusion can apply to a workers’ compensation claim, see Holnam, Inc. v. Indus. Claim Appeals Off., 159 P.3d 795, 797 (Colo. App. 2006), we conclude that it does not apply here. ¶ 41 Claim preclusion bars “the relitigation of matters that have already been decided as well as matters that could have been raised 
16 in a prior proceeding but were not.” Id. at 798. “For a claim in a second proceeding to be precluded by a previous judgment,” the party must show that the first judgment was final and that both proceedings involved the same subject matter, claims for relief, and parties. Id. ¶ 42 The doctrine of claim preclusion does not apply because ALJ Felter’s order was not entered in a prior proceeding but the same workers’ compensation action. Because ALJ Felter concluded that the FAL was invalid, Sullivan has not yet been placed at MMI and the two hearings were part of the same workers’ compensation claim. 3. Law of the Case Doctrine ¶ 43 Under the law of the case doctrine, “prior relevant rulings made in the same case are generally to be followed.” Youngs v. Indus. Claim Appeals Off., 2012 COA 85M, ¶ 35 (quoting In re Bass, 142 P.3d 1259, 1263 (Colo. 2006)). However, the doctrine is discretionary and based primarily on considerations of judicial economy and finality. See id. ¶ 44 ALJ Felter found that (1) Sullivan continued to see Dr. Anderson-Oeser for “leg and back issues”; and (2) Dr. Anderson-
17 Oeser had not yet placed Sullivan at MMI or opined about whether Sullivan had any permanent impairment. However, ALJ Felter did not make any findings about whether Sullivan’s back injury was caused by the work accident. ¶ 45 Because ALJ Felter did not make those findings, there is no prior relevant ruling to follow. Thus, we conclude that the law of the case doctrine does not apply. III. Conclusion ¶ 46 The order is affirmed. JUDGE J. JONES and JUDGE TOW concur.